JOSEPH E. WICE

*v.*

THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY.

|193 351|
|200 ¹321|
|e103a¹256|

*Opinion filed December 18, 1901.*

1. MUNICIPAL CORPORATIONS—*what ordinances may be passed under the police power.* The provision of the general Incorporation act conferring power on cities to "pass and enforce all necessary police ordinances," only authorizes the passage of such ordinances as are conducive to the promotion of the comfort, safety, health, convenience and general welfare of the public.

2. SAME—*when ordinance cannot be sustained as a police regulation.* An ordinance providing that "no person shall get upon or off, or attempt to get on or off, any * * * train of cars * * * while the same is in motion, without first having obtained from the person or persons having charge thereof express permission to do so," and punishing violations thereof by fine, is void both for unreasonableness and for want of power to enact the same, in so far as it applies to passengers. (*McPherson* v. *Village of Chebanse,* 114 Ill. 46, and *Culver* v. *City of Streator,* 130 id. 238, distinguished.)

*Wice* v. *Chicago and Northwestern Ry. Co.* 93 Ill. App. 266, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

W. P. Black, and A. B. Chilcoat, for appellant.

E. E. Osborn, (A. W. Pulver, and Lloyd W. Bowers, of counsel,) for appellee.

Mr. Justice Carter delivered the opinion of the court:

Appellant, plaintiff below, brought this suit against appellee to recover damages for false imprisonment. On the morning of the day in question he was a passenger on the train of appellee, and when said train had reached a place in Chicago where the plaintiff wished to leave the train to proceed to his place of business, and while said train was running very slowly, but before it had reached the station, the plaintiff stepped from the train to the ground, and was proceeding on his way when he was arrested on view by a police officer of the city, but who was under the pay and authority of appellee, and taken before a justice of the peace, where, on complaint of the officer, a warrant was issued and plaintiff was, by the authority of the justice, confined during the day, but by request of the officer was at the close of the day discharged.

These facts, in a more formal way, were alleged in the declaration. The appellee justified by pleading a certain ordinance of the city of Chicago which was as follows: "No person shall get upon or off, or attempt to get upon or off, any locomotive engine, tender, car or train of cars, or any platform or step thereof, while the same, or either of them, are in motion, without first having obtained from the person or persons having charge thereof express permission so to do. Any violation hereof shall be punished by fine of not less than $2 nor more than $50 for each offense." The plaintiff replied, in substance, among other things, that the ordinance was void because the city was without authority of law to pass it, and because it was unreasonable. The court sustained a demurrer to the replications, and the plaintiff standing by

them and refusing to plead over, judgment was rendered against him in bar of his action and for costs. The Appellate Court has affirmed the judgment.

The only question necessary to consider is the alleged invalidity of the ordinance. Clause 66 of paragraph 62, article 5, of the act for the incorporation of cities and villages, provides that the city council shall have power "to regulate the police of the city * * * and pass and enforce all necessary police ordinances." This is the provision of the statute relied on as conferring power on the city to pass the ordinance, and it can be sustained, if at all, only under the police power conferred on the city by this provision of its charter. In *Culver* v. *City of Streator*, 130 Ill. 238, in defining the police power, we said (p. 243): "That power may be defined, in general terms, as comprehending the making and enforcement of all such laws, ordinances and regulations as pertain to the comfort, safety, health, convenience, good order and welfare of the public." This definition is certainly broad enough to cover all the power the city had to pass the ordinance. The provision of the general Incorporation act is a delegation by the General Assembly to the city of Chicago of police power to pass and enforce all necessary police ordinances,—that is, ordinances necessary for the comfort, safety, health, convenience, good order and welfare of its inhabitants. It is assumed by counsel on both sides that the ordinance applies to passengers on railway trains, and we cannot see that any other reasonable construction can be given to it.

The validity of the ordinance is challenged on three grounds: First, that it is not within the grant of power made by the statute; second, that it is unreasonable; and third, that its enforcement will deprive persons of liberty without due process of law, and that, therefore, the ordinance is unconstitutional. We need only consider the first two, although it is clear that the constitutional rights of appellant are involved.

We are of the opinion that it was not the intention of the legislature, as disclosed by said statute, to confer on the city council power to adopt an ordinance so restrictive of the liberty of the citizen as is the one in question, and that the ordinance is unreasonable and oppressive in its operation and is void for both reasons, and that the plea setting it up as a defense to the cause of action was bad and showed no defense. It is difficult to conceive of the necessity, as a police regulation, for such an ordinance, and it is only *necessary* police ordinances that the city is authorized to pass. True, by the word "necessary" "indispensable" was not meant, but only such ordinances as would be conducive to, or beneficial or effective in, the promotion of the comfort, safety, health, convenience, good order or general welfare of the municipal public. In the case at bar it is not alleged in defendant's plea, nor does it appear in any way, that there was any danger to the person or property of others, or even to the plaintiff himself, in the act he performed in stepping from the train, while it was running very slowly, in order that he might proceed at his own convenience to his place of business. The ordinance makes it unlawful, and punishable by fine, for any person to get on or off any car or train of cars, or any platform or steps thereof, while the same are in motion, without first having obtained the express permission so to do from the person or persons in charge of such car or train. It is seen that there is no qualification as to place, speed or danger. It applies to regular passenger stations as well as elsewhere, and to places where it would be as safe to alight as at a regular station, and when the train is moving, however slowly, making the question of danger to the person or property of others, or even to himself, wholly immaterial,—unless it can be said that such an act, under any and all circumstances, is unsafe or injurious to the public or to himself, (if his own safety can be considered as justifying such a law). A passenger, hav-

ing procured his ticket, could not, without violating this ordinance, step upon the platform, or "any step thereof," after the wheels had begun to turn; nor could he step off until they ceased to run,—that is, unless he could first obtain the express permission of the person or persons in charge of the train or car; but if he could do that, neither the speed nor the danger would make any difference. Whether the act would be a violation of the ordinance is made to turn on the question whether or not he has the express permission of those in charge of the train, and not on any question of public safety, convenience, good order or welfare.

Counsel have cited no authority, except the decisions below in this case, and we know of none, where any ordinance of like character has been sustained. Whether the ordinance, as a rule or regulation of the railroad company, would or would not be a reasonable and proper one for it to make, aside from its penal provisions, it is not necessary to consider. As such rule or regulation, if reasonable, it would be the duty of passengers to conform to it; but it does not follow that the city can pass such a by-law, and enforce it by fine and imprisonment, when its power in the premises is limited to the enacting of such by-laws only as promote the public good. The company can make a regulation that passengers must procure tickets before taking passage on the train, and other rules useful in its business; but such a regulation by the city would be outside of its legislative power as conferred by the statute, although simply as a rule or regulation of the company it would not be unreasonable. Similar views were expressed by the Supreme Court of Texas in *Mills* v. *Missouri, Kansas and Texas Railway Co.* 59 S. W. Rep. 874, where a similar ordinance, as applicable to passengers, was held void. The court said: "It may be true that there is no provision of the statute or constitution directly prohibiting the passage of such an ordinance as that in question, but it is a part of the common

law of the State that ordinances not expressly author-
ized must be reasonable and not against common right.
(*Miliken* v. *City Council*, 54 Tex. 388, and authorities there
cited; *Napman* v. *People*, 19 Mich. 552.)    The ordinance, if
taken as prohibiting persons from getting on trains when
otherwise they would have had the right to do so, can
not, in any just sense, be deemed one for the government
of the corporation (municipal) or for the better regula-
tion of the police of the corporation.    On the contrary,
it would simply be a regulation of the rights of the pas-
senger and the carrier, in which the corporation had no
concern.    Not only would it be an attempt to regulate
the exercise of the right of the passenger to take pas-
sage and of the carrier to receive him, but a practical
denial of it, assuming that the circumstances existed to
give the passenger the right to get upon the train while
moving.    If the circumstances did not give the right un-
der the law, then the ordinance adds nothing."

The ordinance here under consideration appears to be
not only unnecessary as a police regulation, and there-
fore beyond the legislative authority of the city to pass,
but also unreasonable and oppressive.    In *Hawes* v. *City
of Chicago*, 158 Ill. 653, reiterating familiar doctrine, this
court said that an ordinance must be reasonable or it
will be held void, and that the question of the reason-
ableness is one for the decision of the courts; that in de-
termining that question the courts will have regard to
all the existing circumstances or contemporaneous con-
ditions, the object sought to be obtained, and the neces-
sity, or want of necessity, for its adoption,—citing *Toledo,
Wabash and Western Railway Co.* v. *City of Jacksonville*, 67 Ill.
37; *City of Lake View* v. *Tate*, 130 id. 247; 1 Dillon on Mun.
Corp. sec. 327. And it was further held that where the
ordinance is passed under a power conferred by a statute
which does not prescribe the details to be observed, then
the ordinance must be a reasonable exercise of such power
or it will be pronounced invalid. (See cases there cited.)

In support of the proposition that the city council had power to pass the ordinance, appellee's counsel cite *Mc-Pherson* v. *Village of Chebanse*, 114 Ill. 46, and *Culver* v. *City of Streator*, 130 id. 238. Those cases differ from this in the essential features we have discussed. The former holds that, under the same provision of the general incorporation act, the village of Chebanse had power to pass an ordinance prohibiting persons from keeping open their places of business in the village for the purpose of vending goods, wares and merchandise on Sunday. The latter merely holds that a city is not liable for the negligent acts of its officers engaged in enforcing an ordinance prohibiting the running at large of unlicensed and unmuzzled dogs. Both of these ordinances were clearly authorized by the police power as delegated by said statute, and neither of them was unreasonable.

Counsel also refer to paragraph 54 of chapter 114 of the Revised Statutes, prohibiting minors and others from climbing on or attaching themselves to any locomotive engine or car, unless in so doing they shall be acting in compliance with law, or by permission, under the lawful rules and regulations of the corporation managing the road,—and cite cases sustaining the act as a valid one. The statute and this ordinance are not analogous. In the first place, the legislature possesses all the power of the State not denied to it by the State and Federal constitutions and not vested in other departments of the State government, while the city council has no power except what has been delegated to it by law. The former may pass any law not prohibited by the organic law, while the latter can pass only such as it has been authorized to pass. Besides, the statute applies to trespassers, excluding those acting in compliance with law, and is designed chiefly to protect children, while the ordinance embraces passengers who are acting in compliance with law in getting on or off trains, even at regular passenger stations established for the purpose. The permission re-

quired by the statute is such as is given under the lawful rules and regulations of the corporation, while the ordinance requires only the exercise of the arbitrary will of persons in charge of the train to grant or refuse permission, whether reasonably or unreasonably, and whether in compliance with the rules and regulations of the corporation or not.    One passenger able to find the person in charge of the train and to get his permission could get on, another unable to do so could not.  The rules and regulations of railroad corporations themselves must be reasonable, otherwise they cannot affect the rights of passengers or of others dealing with the company.  (4 Elliott on Railroads, sec. 1576.)  But the question of reasonableness or of necessity is not made an element, impliedly or otherwise, in this ordinance, and the citizen, in the exercise of his lawful rights, is subjected to fine and imprisonment for an act innocent in itself, but which was not done, and because it was not done, with the express permission of another individual.    Fundamental principles secured by fundamental laws of the State cannot be departed from with safety, especially those affecting personal liberty. "A frequent recurrence to the fundamental principles of civil government is absolutely necessary to preserve the blessings of liberty." (Const. 1870, Bill of Rights, sec. 20.)    It is not meant that the right of passengers to get on or off a moving train between stations cannot be regulated or denied by law or by rules and regulations of the common carrier, but only that it can not be done by an ordinance of the character and in the terms of the one involved in this case.

The judgments of the Branch Appellate Court and the superior court of Cook county are both reversed, and the cause is remanded to the superior court for further proceedings not inconsistent with the views we have expressed.    *Reversed and remanded.*