(No. 11213.—Reversed and remanded.)

FRED BIFFER et al. Defendants in Error, vs. THE CITY OF
CHICAGO et al. Plaintiffs in Error.

*Opinion filed April 19, 1917—Rehearing denied June 8, 1917.*

1. MUNICIPAL CORPORATIONS—*the city of Chicago has express
power to regulate or prohibit sale of deadly weapons.* Section 16
of the original charter of the city of Chicago, not being inconsist-
ent with any provisions of the general Cities and Villages act, is
still in force, and confers upon the city express power to regulate
or prohibit the carrying, wearing or concealing of dangerous and
deadly weapons and the sale of the same.

2. SAME—*the sale of deadly weapons may be regulated under
the police power.* The sale or the advertising for sale of deadly
weapons may be regulated or prohibited by municipalities under the
police power granted by the general Cities and Villages act with-
out violating the provision of the constitution of the United States
concerning the right of the people to bear arms for their defense
and security. (*City of Chicago* v. *Netcher,* 183 Ill. 104, distin-
guished.)

3. SAME—*ordinances for the health and safety of the community
are favored.* Where the city council considers some occupation or
thing dangerous to the health or safety of the community and in the
exercise of its discretion passes an ordinance to prevent such a dan-
ger, it is the policy of the law to uphold such legislation if possible.

4. SAME—*what questions considered to determine reasonable-
ness of ordinance.* In determining whether an ordinance is unrea-
sonable courts will consider all existing circumstances and contem-
poraneous conditions, the object to be attained by the ordinance
and the necessity for its adoption, and the burden is on the party
attacking the ordinance to show wherein unreasonableness consists.

5. SAME—*rule where ordinance is susceptible of two construc-
tions.* If an ordinance is susceptible of two constructions, one of
which will sustain the ordinance and the other defeat it, the court
will adopt the construction sustaining the ordinance.

6. SAME—*section 4a of Chicago ordinance concerning the sale
of deadly weapons construed.* Section 4a of the Chicago ordinance
concerning the sale of deadly weapons merely restricts the sale or
giving away of deadly weapons to such natural persons as have ob-
tained permits from the mayor, and it does not prevent corporations
from purchasing more than one weapon from licensed dealers, nor
does it prevent a licensed dealer from purchasing as many weapons
as he desires under his license.

7. SAME—*section 4a of Chicago ordinance is not invalid because it permits sales for delivery outside the city.* Section 4a of the Chicago ordinance relating to deadly weapons is not invalid because it permits sales to be made without permits where the weapons are to be delivered outside of the city, as the distinction based on the delivery of the weapons within and without the city is reasonable and not arbitrary.

8. SAME—*section 5 of the Chicago ordinance regulating sale of deadly weapons is not invalid as giving arbitrary power to superintendent of police.* Section 5 of the Chicago ordinance concerning deadly weapons, which requires a person desiring to purchase a deadly weapon to obtain a permit from the superintendent of police, is not invalid as delegating arbitrary power to that officer, as he has no discretion to refuse an application for a permit if the applicant proves that he is of good moral character, as required by the ordinance, and is not a minor.

9. SAME—*section 7 of the Chicago ordinance concerning deadly weapons does not prohibit the exhibition of weapon to prospective purchaser.* Section 7 of the Chicago ordinance regulating the sale of deadly weapons, which makes it unlawful to display them in any public manner, does not prohibit the exhibition of such weapons to a prospective purchaser for examination.

10. CONSTRUCTION—*meaning of the term "strict construction."* The term "strict construction" is a relative expression, which does not require giving words the narrowest meaning of which they are susceptible, and the rule of strict construction is not violated by permitting words to have their full meaning.

DUNCAN, J., dissenting.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. FREDERICK A. SMITH, Judge, presiding.

SAMUEL A. ETTELSON, Corporation Counsel, (DONALD P. VAIL, HARRY L. BRIN, and CHESTER E. CLEVELAND, of counsel,) for plaintiffs in error.

SILBER, ISAACS, SILBER & WOLEY, (MARTIN J. ISAACS, of counsel,) for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Defendants in error filed in the circuit court of Cook county, on August 17, 1914, a bill for an injunction to enjoin the city of Chicago and certain of its officials from en-

forcing an ordinance relative to the sale of revolvers and other deadly weapons unless the dealer have a license and pay an annual fee therefor of $25, and also prohibiting the exhibition for sale in show cases or show windows or displaying signs or posters suggesting the sale of such deadly weapons, and also requiring that each purchaser of a deadly weapon designated in the ordinance have a permit from the general superintendent of police, paying therefor one dollar as a license fee. A demurrer to the bill was overruled, and plaintiffs in error electing to stand by the demurrer, a decree was entered in favor of defendants in error holding the ordinance null and void, and thereafter this writ of error was sued out to this court.

Counsel for the defendants in error argue that the city was without authority to pass the ordinance and that it was therefore invalid, or if the city did have power to pass an ordinance of this general nature, this particular ordinance, as worded, is unreasonable and therefore void.

The ordinance in question is an amendment to chapter 53 of the Chicago code of 1911, and its provisions are as follows:

"Sec. 1. It shall be unlawful for any person, firm or corporation to engage in the business of selling, or to sell or give away to any person within the city, any pistol, revolver, derringer, bowie knife, dirk or other weapon of like character which can be concealed on the person, without securing a license so to do as hereinafter provided.

"Sec. 2. Any person, firm or corporation desiring a license authorizing the sale of any of the deadly weapons mentioned in section 1 hereof shall make application in writing to the mayor, setting out in such application the full name and residence of the applicant, if an individual, and if a firm or corporation, the name and residence of each of its members or officers. Such applicant shall also set out the location at which it is intended or desired to conduct such business. Upon receipt of such application it shall be

the duty of the mayor to issue a license to the applicant upon his payment to the city collector of an annual license fee of twenty-five dollars ($25.)

"Sec. 3. Every person, firm or corporation who is licensed to deal in deadly weapons described in section 1 hereof shall make out and deliver to the general superintendent of police of the city of Chicago, every day before the hour of twelve o'clock noon, a legible and correct report of every sale or gift made under authority of said license during the preceding twenty-four hours, which report shall contain the date of such sale or gift, the name of the purchaser or donee, with his or her address and age, the number, kind, description and price of such weapon, the number of the purchaser's permit and the purpose given by such person for the purchase of such weapon, which report shall be substantially in the following form: [Here follows form.]

"Sec. 4. In case the mayor of the city of Chicago shall be satisfied that such applicant has violated any provision of this ordinance, then he may and shall revoke the license of such person, firm or corporation for the selling of such weapons, and the money paid for such license shall be forfeited to the city and no other such license shall be issued to such licensee for a period of three years thereafter.

"Sec. 4a. It shall be unlawful for any person, firm or corporation to sell, barter or give away to any person within the city of Chicago, any pistol, revolver, derringer, bowie knife, dirk or other weapon of like character which can be concealed on the person, except to licensed dealers and to persons who have secured a permit for the purchase of such articles from the general superintendent of police, as hereinafter required: *Provided,* this section shall not apply to sales made of such articles which are to be delivered or furnished outside the city of Chicago.

"Sec. 5. It shall be unlawful for any person to purchase any pistol, revolver, derringer, bowie knife, dirk or other weapon of like character which can be concealed on the per-

son, without first securing from the general superintendent of police a permit so to do. Before any such permit is granted an application in writing shall be made therefor, setting forth in such application the name, address, age, height, weight, complexion, nationality and other elements of identification of the person desiring such permit, and the applicant shall present such evidence of good character as the general superintendent of police in his discretion may require.

"Sec. 6. It shall be the duty of the general superintendent of police to refuse such permit to (*a*) all persons having been convicted of any crime; (*b*) all minors. Otherwise, in case he shall be satisfied that the applicant is a person of good moral character, it shall be the duty of the general superintendent of police to grant such permit upon the payment of a fee of one dollar.

"Sec. 7. It shall be unlawful for any person, firm or corporation to exhibit for sale in show cases or show windows, on counters or in any public manner, revolvers, daggers, stilettos, brass or iron knuckles or billies, or to display any signs, posters, cartoons or display cards suggesting the sale of any revolvers, daggers, stilettos, brass or iron knuckles or billies.

"Sec. 8. Any person, firm or corporation violating any of the provisions of this ordinance shall be fined not less than fifty dollars ($50) nor more than two hundred dollars ($200) for each offense, and every purchase, sale or gift of any weapon mentioned in this ordinance shall be deemed a separate offense.

"Sec. 8*a*. An ordinance regulating the sale of fire-arms and other dangerous weapons passed by the city council March 4, 1912, appearing on pages 3052 and 3053 of the journal of the proceedings of the city council of that date, as amended May 20, 1912, which amendment appears on page 379 of the journal of the proceedings of the city council of that date, and an ordinance regulating the sale of

fire-arms and other dangerous weapons passed by the city council July 1, 1912, appearing on pages 1010 and 1011 of the journal of the proceedings of the city council of that date, as amended September 30, 1912, which amendment appears on page 1842 of the journal of the proceedings of the city council of that date, be and the same are hereby repealed.

"Sec. 9. This ordinance shall take effect and be in force from and after its passage and due publication."

"Section 1. That chapter 53 of the Chicago code of 1911 be and the same is hereby amended by adding a section to be known as section 1753½, in words and figures as follows, to-wit:

"Sec. 1753½. No person licensed as aforesaid shall hereafter show, display or exhibit any pistol, revolver, derringer, bowie knife, dirk or other weapon of like character which can be concealed on the person, in any show window or in any premises immediately abutting upon any street, public way or sidewalk in the city, in such a way that the same may be seen from such street, public way or sidewalk."

Counsel for defendants in error insist that the city of Chicago has no power to pass the ordinance in question; that the legislature has granted no express authority to the city to pass such an ordinance, and if the power exists at all, it is under the implied police power. Counsel for the city insist that the said city has express power under its former charter to regulate or prohibit the carrying or wearing of concealed weapons. Section 16 of its former charter reads as follows:

"Sec. 16. To regulate or prohibit the carrying or wearing, by any person, under his clothes or concealed about his person, any pistol or Colt, or slungshot, or cross-knuckles, or knuckles of lead, brass or other metal, or bowie knife, dirk knife or dirk or dagger, or any other dangerous or deadly weapons, and to provide for the confiscation or sale of such weapons." (Private Laws of 1867, p. 772.)

The city of Chicago is at present exercising its powers under the general Cities and Villages act passed in 1872, which thereafter was adopted by the said city. Section 6 of said general Cities and Villages act provides, among other things, that all laws or parts of laws not inconsistent with the provisions of said act shall continue in force and be applicable to any such city or village the same as if such change of organization had not taken place. (Hurd's Stat. 1916, p. 294.) Under the holdings of this court we are of the opinion that said section 16 of the original charter of the city of Chicago is still in force in said city as it is not inconsistent with any provisions of said general Cities and Villages act, and that therefore the city has been granted express power by the legislature to regulate or prohibit the carrying or wearing or concealing of dangerous and deadly weapons and the sale of same. *City of Springfield* v. *Postal Telegraph Co.* 253 Ill. 346; *City of Cairo* v. *Bross,* 101 id. 475; *Board of Water Comrs.* v. *People,* 137 id. 660. See, also, *People* v. *Hausen,* 276 Ill. 204.

Even if the express power is not granted, we think it is clearly within the implied power of the city council of Chicago to pass such an act to regulate, or even prohibit, the sale of deadly weapons. The city council in cities and the president and board of trustees in villages, under the general Cities and Villages act, have the following powers:

"66. To regulate the police of the city or village, and pass and enforce all necessary police ordinances.

"78. To do all acts, make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease.

"98. To pass all ordinances, rules, and make all regulations, proper or necessary, to carry into effect the powers granted to cities or villages, with such fines or penalties as the city council or board of trustees shall deem proper." (Hurd's Stat. 1916, art. 5, sec. 1, p. 304.)

Police power is hardly susceptible of exact definition. When the city council considers some occupation or thing dangerous to the health of the community and in the exercise of its discretion passes an ordinance to prevent such a danger, it is the policy of the law to favor such legislation. Municipalities are allowed a greater degree of liberty of legislation in this direction than in any other. The necessity for action is often more urgent and the consequences of neglect more detrimental to the public good in this than in any other form of local evil. (*Gundling* v. *City of Chicago,* 176 Ill. 340.) If the subject covered by the ordinance is merely debatable as to power the legislature is entitled to its own judgment. (*Price* v. *Illinois,* 238 U. S. 446.) The most important of the police powers is that of caring for the safety and health of the community. If the health of the public is indispensable to the city, surely the safety of citizens and protection against being maimed or killed are equally indispensable and a like liberal rule of construction should be adopted. (*City of Chicago* v. *Kluever,* 257 Ill. 317.) Municipal corporations can exercise only delegated powers, and in the absence of express statutory provisions to that effect courts are not authorized to indulge in any presumptions in favor of the validity of their ordinances. *Schott* v. *People,* 89 Ill. 195.

Counsel for defendants in error insist that the ordinance, in many of its provisions, is unreasonable and therefore void. In determining whether an ordinance is unreasonable the courts will have regard to all existing circumstances and contemporaneous conditions, the object sought to be attained and the necessity or want of necessity for its adoption. (*Wice* v. *Chicago and Northwestern Railway Co.* 193 Ill. 351; *Hoyne* v. *Danisch,* 264 id. 467.) In discussing this and similar questions in regard to powers of municipalities the late Judge Dillon, in the latest edition of his great work on municipal corporations, said that "large and compact aggregations of people necessarily give rise to pe-

culiar conditions and create peculiar wants, and which, as pointed out in the preceding section, are not common to rural populations and to the State at large. Special provisions are therefore necessary for the health, safety, convenience and good government of populous communities crowded within a narrow space, and these must be supplied." (1 Dillon on Mun. Corp.—5th ed.—5.) Again, on page 7 of the same volume, in discussing the study of the history of ancient cities, he says that "they show how clearly the power to provide for this is essentially and peculiarly one pertaining to municipal rule and regulation. Nor are these studies and the facts that they reveal without practical value to the jurist. They demonstrate that a large and dense collection of human beings occupying a limited area have needs peculiar to themselves, which create the necessity for municipal or local government and regulation, and this, in its turn, the necessity for corporate organization." The entire work of this author on municipal corporations emphasizes how essential it is that special rules and regulations be provided in populous cities that may not be needed in sparsely settled communities.

It is clear, under the authorities, that the sale of deadly weapons may be absolutely prohibited under the police power of the State, and to do this in no way conflicts with the provision of the constitution of the United States and of various State constitutions that "the people have a right to bear arms for their defense and security." (8 R. C. L. 287; *City of Salina* v. *Blaksley,* 7 Ann. Cas. (Kan.) 925, and note; *In re Brickey,* 1 Ann. Cas. 55; *State* v. *Burgoyne,* 75 Tenn. 173; *Caswell & Smith* v. *State,* 148 S. W. Rep. [Tex.] 1159.) If the State has the right to prohibit, such right necessarily includes the power of regulating, and the power to regulate includes the power of licensing. (*City of Chicago* v. *Drogasawacz,* 256 Ill. 34; *Kinsley* v. *City of Chicago,* 124 id. 359.) If the sale can be entirely prohibited, the provision in this ordinance against displaying

and advertising revolvers for sale, thus tending to decrease the sales, must be held valid as doing indirectly what could be done directly.  *Crowley* v. *Christensen,* 137 U. S. 86; *Quincy* v. *Kennard,* 151 Mass. 563; *Trageser* v. *Gray,* 73 Md. 250.

Counsel for defendants in error earnestly insist that the ordinance is unreasonable in certain of its provisions.   In deciding whether any ordinance is unreasonable certain general rules of construction must always be kept in mind. Ordinances are presumed to be valid, and it is incumbent upon the party attacking an ordinance as being unreasonable or oppressive in the exercise of the power, to affirmatively and clearly show wherein the unreasonableness consists.  (*People* v. *Village of Oak Park,* 266 Ill. 365.)   If there are two possible constructions, one of which will carry out the ordinance and the other of which will defeat it, the court will adopt the construction sustaining the ordinance. (*City of Chicago* v. *Oak Park Elevated Railroad Co.* 261 Ill. 478.)  If there is any doubt as to the construction of an ordinance that doubt should be resolved in accordance with the manifest intention of such ordinance.  *City of Benton* v. *Blake,* 263 Ill. 358.

Counsel for defendants in error, in this connection, insist that this ordinance, being penal in its nature, should be strictly construed.   "Strict construction" is not a precise but a relative expression.   It is not the exact converse of liberal construction, for it does not consist in giving words the narrowest meaning of which they are susceptible.   It is not violated by permitting words of the statute to have their full meaning.   (2 Lewis' Sutherland on Stat. Const.— 2d ed.—sec. 518.)  "It is not a substitute for all other rules. It does not mean that whenever a controversy is or can be raised as to the meaning of a statute ambiguity occurs, which immediately and inevitably determines the interpretation of the statute.  *  *  *  Its proper office is to help solve ambiguities,—not to compel an immediate surrender

to them." (*Citizen's Bank* v. *Parker*, 192 U. S. 73.) The rule of strict construction has lost much of its force and importance in recent times, since it has become more and more generally recognized that the paramount duty of the judicial interpreter is to put upon the language of the legislature, honestly and faithfully, its plain and rational meaning and to promote its object. Endlich on Interpretation of Statutes, sec. 329; Maxwell on Statutes,—4th ed.—426; *Warner* v. *King*, 267 Ill. 82.

It is insisted by counsel for defendants in error that section 4*a* of the ordinance is invalid because it discriminates between natural persons and corporations and also because it is vague and uncertain in its terms; that it is plain from its reading that weapons may be sold to natural persons, only. Reading section 4*a* in connection with the rest of the ordinance, especially sections 2 and 3, it is clear that the restriction with reference to corporations has to do with the disposition or sale of the weapons and not the acquiring of them by the corporations. This is very plain from the other sections of the ordinance, which provide that a corporation may be licensed to buy and handle the deadly weapons referred to. It seems clear, reading the entire ordinance together and having in mind the evil to be remedied and the object sought to be attained, that section 4*a* applies only to the sale of the weapon to the person who is to use it,—that is, to the natural person. This is the only reasonable construction to put upon the word "person" in section 4*a* to carry out the purpose and the object of the ordinance in the light of the evil to be remedied. This construction is in accordance with the reasoning of this court in *City of Chicago* v. *Lowenthal*, 242 Ill. 404, where this court held that the ordinance there under consideration applied only to retail junk dealers and not to those engaged in a wholesale business, as it was clear from the entire wording of the ordinance that the council only intended to have it apply to those who were engaged in the retail business.

Reading this entire ordinance together, it seems to us that it authorizes corporations to purchase of licensed dealers more than one weapon for the defense of their property.

Counsel for defendants in error also argue that under the provisions of this statute a licensed dealer could only purchase one weapon from the wholesale dealer. This is clearly contrary to the wording of section 4*a*, for it provides specifically that it shall be unlawful to sell a weapon that can be concealed on the person, to any person "except to licensed dealers and to persons who have secured a permit." Manifestly, the licensed dealer, under this wording, can buy as many weapons as he desires under the authority of his license.

It is further insisted that to distinguish in the ordinance between natural and artificial persons is an unreasonable classification. With this we do not agree. We think the distinction between natural and artificial persons in the sale of deadly weapons is not an unreasonable classification. It seems quite clear that the ordinance did not intend to be applied to the sale of weapons to corporations, as they have no "moral character" in the sense in which that term is used in the ordinance.

Counsel for defendants in error insist that because this ordinance permits sales to be made when the articles are to be delivered or furnished outside the city of Chicago such classification is unreasonable and therefore the ordinance should be held invalid. In cases involving the validity of statutes or ordinances all reasonable doubts are to be resolved in favor of upholding the legislation establishing a classification. Such ordinances or statutes are not unconstitutional because they result in some practical inequalities. (*Orient Ins. Co.* v. *Daggs,* 172 U. S. 557; *Minnesota Iron Co.* v. *Kline,* 199 id. 593.) In exercising its power to make classifications for the purpose of enacting laws or ordinances over matters within the jurisdiction of the State or municipal authorities a legislative body is permitted a

wide range of discretion. The question of classification is primarily for the legislative body, and only becomes a judicial question when the legislative action is clearly unreasonable. (*Magoun* v. *Illinois Trust and Savings Bank*, 170 U. S. 283.) The rule that laws and ordinances shall be general and reasonable does not mean that every statute shall have effect upon every individual and in every locality of the State. Such a rule of construction is impossible to be followed. Many illustrations can be given where local legislation is held reasonable as to governing municipalities or localities. Local option legislation is universally upheld. (*People* v. *Cregier,* 138 Ill. 401; *People* v. *Kaelber,* 253 id. 552; *Adams* v. *Beloit,* 47 L. R. A. [Wis.] 441.) Laws providing a different rate of assessment for local improvements have been held valid, (*Burnett* v. *Commonwealth,* 169 Mass. 417,) also different maximum rates to be charged by grain elevators. (*Budd* v. *New York,* 143 U. S. 517.) "There is nothing in the constitution to prevent any State from adopting any system of laws or judicature it sees fit for all or any part of its territory. * * * If every person residing or being in either portion of the State should be accorded the equal protection of the laws prevailing there he could not justly complain of a violation of the clause referred to, for, as before said, it has respect to persons and classes of persons. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances." (*Missouri* v. *Lewis,* 101 U. S. 22, on p. 31.) The real question, then, in discussing the points raised by defendants in error as to the reasonableness of this ordinance in its classification is whether all people within the same territory are treated alike under like circumstances and conditions. We think, without question, they are. The evil to be remedied and the purpose of the ordinance are clearly to control the sale of deadly weapons to the man who is to carry such weapons within the limits

of the city of Chicago. While under the workings of this ordinance certain practical inequalities may arise, we do not think the classification so unreasonable as to violate any fundamental principle of law. There can be no question but that the prevention of the carrying of concealed deadly· weapons will tend strongly to promote the safety of the community. Such regulations clearly come within the police power of the State. This power, which permits the State to prohibit all things hurtful to the comfort, welfare and safety of society, is "co-extensive with self-protection, and has frequently been termed 'the law of overruling necessity.' " (*Town of Lake View* v. *Rose Hill Cemetery Ass'n,* 70 Ill. 191; *People* v. *Henning Co.* 260 id. 554.) The courts construe the laws,—they do not make them. In case of unwise, though constitutional, legislation by the representatives of the people, the people can correct the evil but the courts cannot assume their rights. "The judiciary can only arrest the execution of a statute when it conflicts with the constitution. It cannot run a race of opinions upon points of right, reason and expediency with the law-making power." (Cooley's Const. Lim.—6th ed.—201.) So long as the classifications provided by the ordinance are reasonable and clearly within the police power expressly granted to the city authorities or necessarily implied, the courts cannot interfere and declare such ordinance invalid without usurping powers confided to another branch of government.

It is further most earnestly urged that section 5 of the ordinance is unreasonable and invalid in providing that a weapon can only be sold to a person after he has secured a permit from the general superintendent of police; that this is an illegal delegation of authority. What is lawful delegation of authority by legislative bodies has been a matter of much discussion. "Undoubtedly, the legislature must declare the policy of the law and fix the legal principles which are to control in given cases, but an administrative body may be invested with the power to ascertain the facts and condi-

tions to which the policy and principles apply. If this could not be done there would be infinite confusion in the laws, and in an effort to detail and to particularize they would miss sufficiency both in provision and execution." (*Mutual Film Corp.* v. *Ohio Industrial Com.* 236 U. S. 230.) "The true distinction is between the delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." (1 Sutherland on Stat. Const.—2d ed.— sec. 88.) This doctrine has been sanctioned by this court more than once. (*Spiegler* v. *City of Chicago,* 216 Ill. 114; *Arms* v. *Ayer,* 192 id. 601.) See, also, for a discussion of this subject of delegated power, *People* v. *Reynolds,* 5 Gilm. 1. The point of discussion in all these cases is, that the power to ascertain facts and apply the law according to such facts, given to the local municipal authorities, will be sustained as valid legislation while the power to make the law will not. It is impossible for legislative authority to legislate with reference to all the details. This law, in the authority it grants the superintendent of police, is in no way contrary to the general principles laid down in the authorities just cited. As was said in *Gundling* v. *City of Chicago,* 177 U. S. 183, when the question of the validity of the ordinance of the city of Chicago was under consideration which gave the mayor power to refuse or grant a license under certain conditions: "The mayor is bound to grant a license to every person fulfilling these conditions, and thus the fact of fitness is submitted to the judgment of the officer, and it calls for the exercise of a discretion of a judicial nature by him." (See, also, on this point, the reasoning of this court to the same effect in the same case, 176 Ill. 340, at page 350.) This court has said with reference to a similar ordinance delegating power to municipal officers to pass upon the moral character of the applicant that such

delegation was proper, for the reason that "if there should be an abuse of power on the part of either the chief of police or the mayor the ordinance does not prevent an application to a court to compel either officer to perform his duty and issue a permit for a picture which is not immoral or obscene." (*Block* v. *City of Chicago,* 239 Ill. 251.) Section 5 does not give arbitrary or unlimited power to the superintendent of police. If the person is of the character provided for in said section it is the duty of the superintendent of police to grant the permit. If he refuses arbitrarily, without good reason, the courts can compel him to perform his duty. This is a provision similar to that in all ordinances where a city officer is authorized to grant a license to a person of good moral character. To require the city council to pass upon the question of the character of the applicant in each instance would defeat the very object of the ordinance, as it would be impracticable for the city council to undertake such duties as to every applicant. If this ordinance permitted the superintendent of police to arbitrarily refuse to grant the permit to any person applying therefor, then the authorities cited and relied on by counsel for defendants in error, such as *Cicero Lumber Co.* v. *Town of Cicero,* 176 Ill. 9, *City of Kinmundy* v. *Mahan,* 72 id. 462, *Noel* v. *People,* 187 id. 587, *Tugman* v. *City of Chicago,* 78 id. 405, and other cases of like character where arbitrary power was given, might be in point, but they do not apply to said section 5, as the superintendent of police does not possess arbitrary power in granting or refusing permits to applicants.

Counsel for defendants in error insist that under section 7 of this ordinance the dealer in deadly weapons would not be permitted to show a weapon to a prospective purchaser. Such construction of the ordinance, in our judgment, is most unreasonable and should not be followed. Where questions similar to these have arisen in the con-

278 — 37

struction of statutes, the courts have held that the examination of a pistol with a view to purchase was not forbidden by the statute. *Jackson* v. *State,* 77 S. E. Rep. (Ga.) 371; *Cosper* v. *State,* 79 S. E. Rep. 94.

Having in mind the object to be attained and the evil sought to be remedied, we do not think this ordinance should be held invalid because it is unreasonable or operates unequally upon all persons of the same class. "If all laws were held unconstitutional because they did not embrace all persons few would stand the test; that a law is general not because it embraces all the governed, but that it may from its terms, when many are embraced in its provisions, embrace all others when they occupy like positions to those who are embraced." (*City of Clinton* v. *Wilson,* 257 Ill. 580; *Hawthorn* v. *People,* 109 id. 302.) The nature of the business of selling the weapons enumerated in the ordinance is such that the sale could have been entirely prohibited. "It is a matter of common knowledge that the indiscriminate carrying and use of pistols leads often to gross violations of law, such as affrays, broils and murders, for which reason the State is justified in keeping a constant vigil not only upon their sale and other methods of procurement but their use as well." *Caswell & Smith* v. *State, supra.*

Counsel for defendants in error rely strongly upon the reasoning of *City of Chicago* v. *Netcher,* 183 Ill. 104, as supporting their argument that the ordinance is invalid because of its restrictions upon the right to expose weapons for sale, especially the following statement in the opinion (p. 110): "It is a necessary incident to the ownership of property that the owner shall have a right to sell or barter it, and this right is protected by the constitution as such an incident of ownership. When an owner is deprived of the right to expose for sale and sell his property he is deprived of property within the meaning of the constitution, by taking away one of the incidents of ownership." Coun-

sel in quoting this part of the opinion seem to have over-looked that part which immediately follows on the same page where the court said: "The State, for the purpose of public protection, may, in the proper exercise of the police power, impose restrictions and regulations, but the right to acquire and dispose of property is subject only to that power." Clearly, this ordinance as to the exposure for sale comes within this statement. It simply attempts to impose a restriction and regulation upon the sale. The conclusion and reasoning in this case are in no way in conflict with the conclusion reached herein that the ordinance is a valid regulation. On the contrary, the reasoning of the entire opinion in this case tends strongly to support the conclusion reached here as to the validity of this ordinance.

While the ordinance here in question might have been worded more clearly than it is on some of the questions raised by counsel for the defendants in error, we think, when all the sections of this ordinance are construed together, having in mind the evil to be remedied and the purpose to be attained, that the ordinance is not so unreasonable in any of its parts as to justify the courts in holding it invalid. Statutes so worded as to be subject to many of the same objections raised to this ordinance have been upheld by the courts of New York in *People* v. *Fallon,* 146 N. Y. Supp. 253, *People* v. *Warden of City Prison,* 139 id. 277, and other decisions of that State.

The decree of the circuit court will be reversed and the cause remanded for further proceedings in harmony with the views herein expressed.    *Reversed and remanded.*

Mr. JUSTICE DUNCAN, dissenting.