(No. 12339.—Judgment affirmed.)

THE CITY OF CHICAGO, Appellee, *vs.* THE WASHINGTONIAN HOME OF CHICAGO, Appellant.

*Opinion filed June 18, 1919—Rehearing denied October 9, 1919.*

1. ORDINANCES—*when buildings may be considered as one structure under ordinance for prevention of fire.* Under an ordinance requiring certain buildings having a floor space of 6000 square feet to be provided with automatic sprinklers for the prevention of fire, buildings which are so connected by passageways that they form, in fact, one structure and are used as one building may be considered as such in estimating the floor space.

2. SAME—*Statute of Limitations does not apply where violation of ordinance is a continuing offense.* Where an ordinance requiring certain buildings to be provided with automatic sprinklers for the prevention of fire provides that every day a building is occupied contrary to the ordinance shall be considered a distinct offense, the violation of the ordinance is a continuing offense, and the Statute of Limitations will not bar an action for the penalty for such violation while the building continues to be so occupied.

3. SAME—*ordinance may be proper exercise of police power although it results in inconvenience to individual.* A city may pass any reasonable ordinance necessary or proper to carry into effect the powers granted by the legislature, whether such powers are expressly conferred or are implied from the duty of the city to protect lives and property, even though inconvenience or loss to the individual results.

4. SAME—*ordinance in exercise of police power is presumed to be valid.* A party attacking an ordinance as an unreasonable or oppressive exercise of the police power has the burden of showing affirmatively and clearly where the unreasonableness exists, as the presumption is that the ordinance is valid.

5. SAME—*construction sustaining ordinance will be adopted, if possible.* Where one construction will sustain an ordinance in the exercise of the police power and another will defeat it, the court, if possible, will adopt the construction sustaining the ordinance.

6. SAME—*when ordinance requiring automatic sprinklers does not give arbitrary power to city officer.* In an ordinance requiring the owners of certain buildings to install automatic sprinkler systems, a provision that the plan for such installation shall be approved by the chief of the bureau of fire prevention does not give arbitrary power to that officer, who has authority only to approve the plan and not to say what system shall be installed.

7. SAME—*ordinance tending to prevent fires is within the police power.* Any regulation which tends to lessen the damage and dangers of fire and prevent the spreading thereof in densely populated cities is one which tends toward the protection of life and property of the public, and, if not oppressive and unreasonable, is a proper exercise of police power.

8. POLICE POWER—*exercise of police power may impair obligation of contracts.* The police power is the power of the State coextensive with self-protection, and its exercise is not prohibited by the provision of the Federal constitution against the passage of laws impairing the obligation of contracts.

9. SAME—*police power of the State is recognized by Federal Supreme Court.* That which is recognized by the State Supreme Court as within the police power of the State is so recognized by the Supreme Court of the United States.

APPEAL from the Municipal Court of Chicago; the Hon. WELLS M. COOK, Judge, presiding.

A. W. MARTIN, and EDWARD H. S. MARTIN, for appellant.

SAMUEL A. ETTELSON, Corporation Counsel, and HARRY B. MILLER, (DANIEL WEBSTER, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

The appellant, the Washingtonian Home of Chicago, a corporation, was found guilty, after a trial without a jury in the municipal court of Chicago in an action to recover a penalty for the violation of paragraph (*f*) of section 16,

sections 18, 24 and 22b of the fire prevention ordinance of the city of Chicago, due to and arising out of its failure to equip on July 14, 1916, its buildings at 1533 Madison street, in said city, with an approved system of automatic sprinklers. The evidence consists of a written stipulation dated May 31, 1918, and certified portions of the fire prevention ordinance of the city of Chicago, of which the municipal court took judicial notice. Said ordinance was passed July 22, 1912, and has been at all times thereafter in full force and effect. The court found appellant guilty and rendered judgment for a fine of five dollars and costs.

Paragraph (f) of section 16 of said ordinance places every building used for a hospital, for housing of the sick and infirm, imbeciles or children, and every jail, police station, asylum, house of correction and detention, and every home for the aged and decrepit, where sleeping accommodations are provided for more than ten persons, in class IIc. Section 18 of the ordinance provides that every building specified in subsequent sections of the ordinance which is in existence at the time of the passage of the ordinance shall be equipped with an approved automatic sprinkler system within two years from and after the date of the passage of the ordinance; that the owner of such building shall submit plans for such proposed sprinkler system for approval to the chief of the fire prevention and public safety department, in which plans shall be shown the size, capacity and location of all sprinkler heads, pumps, tanks or pipes, and any other apparatus to be used in connection therewith, within six months from and after the passage of the ordinance, which plans, when approved, shall be stamped showing such approval before the proposed sprinkler system shall be installed by the owner. Section 24 provides for an approved automatic sprinkler system on all floors and basements of non-fireproof buildings more than two stories in height and having an area of more than 6000 square feet, excepting certain rooms. Section 22b provides a penalty

for a violation of the provisions with reference to install-
ing a sprinkler system of not less than $5 nor more than
$200 for each offense, and each and every day such build-
ing is occupied contrary to said ordinance shall be consid-
ered a separate and distinct offense.

It is stipulated that the building of the appellant is not
equipped with an approved system of automatic sprinklers;
that the appellant is a charitable corporation and is not
organized for profit, and in carrying out its corporate ob-
jects cares for certain inebriate patients without charge and
makes charges for the care of certain patients able to pay;
that the expenses of the institution equal in amount its re-
ceipts from certain charitable trust funds and other sources;
that the appellant is endowed with valuable grounds and
buildings thereon; that the insurance premiums would be
reduced from $1.16 for $100 of insurance for one year to
sixty-five cents by the installation of the proposed sprink-
lers; that the plans and specifications attached shall be a
part of the stipulation; that the appellant conducts in the
second, third, fourth and fifth stories in section "A" shown
in said plan, and in all the stories of sections "B" and "C"
shown therein, an institution for the care, cure and reclama-
tion of inebriates and has since said building was erected;
that all of the first floor of section "A" except the hall
and entrance is occupied by stores, namely, a drug store,
shoe store and grocery store, including the basements of the
respective stores; that the stores contain the usual and or-
dinary oils and inflammable materials that are incident to
such business; that section "A" of the building was built
in 1875, section "B" in 1880 and section "C" in 1883; that
all are lighted with gas; that there are hallways and com-
munications between such sections; that all of said sections
are in class IIc described in section 16a of the ordinance.
The stipulation also sets out the material used in the con-
struction of the outside walls and interior partitions. De-
fendant has been notified by the bureau of fire prevention

289 — 14

and public safety to install an approved system of automatic sprinklers as provided for in the ordinance and has never submitted plans for such system for approval or installed such a system. The stipulation also sets out a comprehensive description of an approved system of automatic sprinklers. It is also stipulated that in section "A" are sleeping accommodations for sixty-one persons, in section "B" for seven persons and in section "C" for forty-four persons; that said sections are operated as one building; that certain windows, rooms and fire-escape exits are barred with iron gratings, mostly permanent, and some locked with padlocks to prevent the escape of patients under treatment; that there are three padded cells with heavy doors, used for the confinement of violent patients, locked with padlocks when so used. The stipulation also contains a statement of the advantages of the use of a sprinkler system.

Appellant argues numerous assignments of error. Its principal contentions are, however, that the ordinance does not apply to the buildings and premises of the appellant; that the action is barred by the Statute of Limitations, and that the ordinance is unconstitutional and void because not within the power of the city council to pass.

In support of the first contention appellant cites section 24 of the ordinance, as follows:

"The following buildings hereinbefore referred to shall be equipped with an approved automatic sprinkler system, except as otherwise provided: * * *

"Class IIb and IIc buildings—On all floors and basements of non-fireproof buildings more than two stories in height, and having an area of more than 6000 square feet, except in sleeping rooms, reading rooms, parlors, bath rooms, dining rooms, smoking rooms, gymnasiums, and except hallways containing stair or elevator shafts enclosed with incombustible or fire-proof material."

The evidence and stipulation in the record show that said premises consist of three buildings used and operated

as one building. Said buildings are connected by passage-ways, so that they form, in fact, one structure. We are of opinion that the structures in question should be treated as one building. This being true, a computation shows the ground space occupied by said buildings amounts to more than 6000 feet. It is contended that the space referred to in the ordinance should be construed as being floor space and not ground space. If this contention be adopted it can avail appellant nothing, as the floor space on all floors would necessarily be computed. In either view of the matter it is clear that the buildings occupy more than 6000 square feet and come within the purview of section 24 of the ordinance.

As to appellant's contention that the Statute of Limitations applies, it is sufficient to say that the offense designated in the ordinance is a continuing offense, it being provided under section 22b of the ordinance that "each and every day that said building is so occupied contrary to this ordinance shall be considered a separate, distinct offense." The Statute of Limitations, therefore, does not apply.

The principal contention of appellant is that the city is without power to pass the ordinance in question. Such an ordinance, to be valid, must be within the police power of the State, which may be delegated to city councils. (*Biffer* v. *City of Chicago,* 278 Ill. 562; *Williams* v. *City of Chicago,* 266 id. 267; *City of Chicago* v. *Mandel Bros.* 264 id. 206.) Section 1 of article 5 of the Cities and Villages act provides the powers of city councils. An examination of paragraphs 61, 62, 63, 65, 66, 71, 75, 77, 78 and 98 shows that the city council has the general power to regulate the construction and maintenance of buildings of the character of the one in question here. A municipality has power to pass any ordinance which is necessary or proper to carry into effect the powers granted by the legislature. Such powers may be expressly conferred by the statute or may be implied from the duty imposed upon the city council to protect the lives, health and property of the public. (*City*

*of Chicago* v. *Mandel Bros. supra; Williams* v. *City of Chicago, supra.*) Reasonable regulations for the protection of the lives and the safety of citizens, as well as of property against destruction by fire, are within the powers delegated to the city and which may be exercised by it. (*Spiegler* v. *City of Chicago,* 216 Ill. 114; *Gundling* v. *City of Chicago,* 176 id. 340.) A power within the police power of a city may be reasonably exercised, even though such exercise may result in inconvenience or loss to the individual. In the case of *Haller Sign Works* v. *Physical Culture Training School,* 249 Ill. 436, the court said: "All uses of property or courses of conduct which are injurious to the health, comfort, safety and welfare of society may be prohibited under the sovereign power of the State, even though the exercise of such power may result in inconvenience or loss to individuals. In this respect individual rights must be subordinate to the higher rights of the public. The power that the State may exercise in this regard is the overruling law of necessity, and is founded upon the maxim, *salus populi est suprema lex.* The existence and exercise of this power are an essential attribute of sovereignty, and the establishment of government presupposes that the individual citizen surrenders all private rights the exercise of which would prove hurtful to the citizens generally. (*City of Chicago* v. *Rogers Park Water Co.* 214 Ill. 212; *Mugler* v. *Kansas,* 123 U. S. 623.) While the general principle above announced is uniformly recognized, it is equally true that the owner of property has the right to make any use of it he desires that does not endanger or threaten the safety, health, comfort or general welfare of the public." Mr. Cooley, in his work on Constitutional Limitations, states the doctrine of the police power thus: "All contracts and all rights, it is held, are subject to this power, and regulations which affect them may not be established by the State but must also be subject to changes, from time to time, with reference to the well being of the community,

as circumstances change or as experience demonstrates the necessity." (Cooley's Const. Lim. 57.)

The police power is the power of the State co-extensive with self-protection, and has been termed, not inaptly, "the law of overruling necessity." Such power is not prohibited by that clause of the constitution of the United States which forbids the passage of laws impairing the obligation of contracts. (*Town of Lake View* v. *Rose Hill Cemetery Co.* 70 Ill. 191.) Whether or not an ordinance is the proper exercise of police power is a judicial question. Is this ordinance a proper exercise of police power? We approach this question under the presumption of law that the ordinance is valid, and the rule of law places upon the party attacking an ordinance as an unreasonable or oppressive exercise of the police power, the burden to affirmatively and clearly show where the unreasonableness exists. (*People* v. *Village of Oak Park,* 266 Ill. 365.) Where two constructions are possible, one which will sustain the ordinance and the other which will defeat it, the court will adopt the construction sustaining the ordinance. *City of Chicago* v. *Oak Park Elevated Railroad Co.* 261 Ill. 478; *City of Benton* v. *Blake,* 263 id. 358.

The ordinance in question provides for the installation in buildings of the character of that of the appellant of a sprinkler system, of which the evidence shows there are a number of approved makes on the market, and the plan for the installation of a sprinkler system must be submitted to and approved by the chief of the bureau of fire prevention and public safety. Counsel for appellant urge that this provision is invalid, for the reason that it gives arbitrary power to an officer of the city. We do not so view it. The chief of the bureau of fire prevention and public safety is given power to approve the plan of installation, only. He has nothing whatever to say with regard to what system shall be installed. Section 18 of the ordinance provides as follows: "The owner or owners of all such buildings shall

submit plans for approval to the chief of fire prevention and public safety for such proposed sprinkler system, showing the size, capacity and location of all sprinkler heads, pumps, tanks or pipes, and any other apparatus which is to be used in connection with such sprinkler system. * * * Said plans, when approved, shall be stamped by him to that effect before such system shall be installed."

The question of approval of plans by an officer of a municipality was passed upon in the case of *Arms* v. *Ayer,* 192 Ill. 601, the question there arising under the Fire-escape act of 1897. That act provides that the "number, locality, material and construction of such escapes shall be approved by the inspector of factories." This court in that case said: "The first objection made to the statute by counsel for appellees is that it imposes legislative power upon the inspector of factories, in that it authorizes him to determine how many, and in what position, fire-escapes shall be placed, etc. It must be admitted that the act is loosely drawn, but the rule that it is the duty of courts to so construe statutes as to uphold their constitutionality and validity, if it can be reasonably done, is so well established that the citation of authorities is needless. In other words, if the proper construction of a statute is doubtful, courts must resolve the doubt is favor of the validity of the law. Statutes and city ordinances providing for fire-escapes are usually somewhat general in their enactments, and necessarily so, for the reason that it is impossible for the legislature to describe in detail how many fire-escapes shall be provided, how they shall be constructed and where they shall be located in order to serve the purpose of protecting the lives of occupants, in view of the varied location, construction and surroundings of buildings; and hence, so far as we have been able to ascertain, acts similar to the first section of this statute have been sustained in other States, though perhaps the question here raised has never been directly presented. (*Rose* v. *King,* 49 Ohio St. 213; *Willy* v. *Mulledy,* 78

N. Y. 310; *Pauley* v. *Steam Gauge and Lantern Co.* 15 L. R. A. 194; *Schott* v. *Harvey*, 105 Pa. St. 222; *Orin* v. *Steinkamp*, 54 Ohio St. 284; *Sewell* v. *Moore*, 166 Pa. St. 570; *Keely* v. *O'Conner*, 106 id. 321; 2 Pa. Dist. Rep. 623.) The general rule is, that a statute must be complete when it leaves the legislature,—as to what the law is,— leaving its execution to be vested in third parties. Thus, it was said in *Dowling* v. *Lancashire Ins. Co.* 92 Wis. 63: 'The result of all the cases on this subject is, that a law must be complete in all its terms and provisions when it leaves the legislative branch of the government, and nothing must be left to the judgment of the electors or other appointee or delegate of the legislature, so that in form and substance it is a law in all its details *in presenti*, but which may be left to take effect *in futuro*, if necessary, upon the ascertainment of any prescribed fact or event.' And it is said in Sutherland on Statutory Construction (sec. 68): 'The true distinction is between a delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no objection can be made.' In *People* v. *Reynolds*, 5 Gilm. 1, it was held that to establish the principle that whatever the legislature may do it shall do in every detail or else it shall go undone, would be almost to destroy the government. It is there said (p. 13): 'Necessarily, regarding many things especially affecting local or individual interests, the legislature may act either mediately or immediately. We see, then, that while the legislature may not divest itself of its proper functions or delegate its general legislative authority, it may still authorize others to do those things which it might properly yet cannot understandingly or advantageously do itself. Without this power legislation would become oppressive and yet imbecile.' " Concerning the objection that the ordinance confers judicial powers on an

officer of the city, this court further said in the *Arms case:* "Of still less force is the objection that the act confers judicial power upon the inspector of factories. The inspector is given no power to judicially determine any question but acts ministerially in the supervision of the building of fire-escapes. Judicial power is 'the power which adjudicates upon and protects the rights and interests of individual citizens, and to that end construes and applies the law.' The judicial power is never extended to cases of the exercise of judgment in the execution of a ministerial power.—*Owners of Lands* v. *People,* 113 Ill. 296."

In the case of *Spiegler* v. *City of Chicago, supra,* where it was sought to enjoin the enforcement of what was known as the "drip-pan ordinance," which ordinance required that the drip-pans or devices used by auto vehicles shall be subject to the approval of the commissioner of public works, this court said: "The power to legislate is not conferred by said ordinance upon the commissioner of public works, but he is only given power to approve the drip-pans or other devices with which said 'tank wagons or other wagons or vehicles' are equipped. The power thus conferred upon the commissioner of public works pertains solely to the execution of the ordinance and not to the passage thereof."

The ordinance in question is not subject to the objection urged. The sprinkler apparatus is designed to prevent the spreading of fire and to put out fires in their incipient stages, and the testimony in this record tends to establish that they are efficient in so doing. Any regulation which tends to lessen the damage and dangers of fires and prevent the spreading thereof in densely populated cities is one which tends toward the protection of life and property of the public, and is therefore, unless oppressive and unreasonable, a proper exercise of police power. The ordinance in question is not shown by the record to be oppressive in its application to appellant. It owns and is possessed of valuable property at the corner of Madison and Ogden ave-

nues, in the city of Chicago. This, the evidence shows, is a populous section of the city. The building is occupied by patients suffering from the effects of alcohol, making it necessary to have a large portion of the windows barred with iron grates. The evidence also shows that windows to the fire-escapes are thus grated and are padlocked. The nature of the ailment of the patients in this building is such as to make them at times unruly and difficult to handle. Especially would this appear to be true in the case of fire. The cost of the installation of this system in appellant's property is shown to be about $5500, while the value of the property is shown by the record to be considerably over $150,000. The record also shows that a saving in insurance premiums owing to the installation of a sprinkler system would pay the expense of such system in approximately thirty years. Considering these facts, together with the fact that such system is a protection to the property of appellant, it becomes apparent that such requirement is not oppressive. The ordinance is general in its application. It applies to all buildings coming within the character of the one described by its terms and therefore cannot be said to be discriminatory.

It is also contended that the ordinance is void on the ground that it violates the Federal constitution. That which is recognized by the State as within the police power of the State is so recognized by the Supreme Court of the United States. *Cusack Co.* v. *City of Chicago*, 242 U. S. 526.

We are of the opinion that the ordinance in question was a reasonable exercise of the police power delegated to the city council and that it did not violate the State or Federal constitution. The judgment of the municipal court will therefore be affirmed. *Judgment affirmed.*