## Johnson Express Company v. City of Chicago.

### Gen. No. 13,326.

1. COMMON CARRIER—*who within legal definition of.* A parcel delivery company is a common carrier.

2. ORDINANCE—*who not in position to question validity of.* A party is not entitled to question the validity of an ordinance with respect to a portion thereof which has not been enforced against it.

3. ORDINANCE—*when not invalid as illegally discriminative.* An ordinance requiring the licensing of public carts, etc., held not invalid as illegally discriminating between different classes of vehicles.

Action commenced before justice of the peace. Appeal from the Criminal Court of Cook County; the Hon. A. C. BARNES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Affirmed. Opinion filed October 4, 1907.

**Statement by the Court.** This action was commenced before a justice of the peace in Cook county, and judgment was rendered by him against appellant for $100 and costs for violation of sections 2325, 2326, 2331, 2332 and

2346 of the Revised Municipal Code of Chicago of 1905. From that judgment appellant appealed to the Criminal Court of Cook county, where the cause was heard upon an agreed statement of facts and appellant was found guilty and fined the sum of $50.

It was agreed on the trial that the following facts should be taken as true:

"That said Johnson Express Company is a corporation organized under the general laws of the State of Illinois, with its principal office, barns and warehouse at 39 W. Adams street, in the city of Chicago, and with branch offices and distributing centers at Sixty-first street and Wentworth avenue, Ninety-second street and Ewing avenue, and 228 Kinzie street, in the city of Chicago, and other similar offices in the suburban towns of Evanston, Oak Park, La-Grange, Winnetka, Highland Park, Lake Forest and Waukegan; that it is engaged in transporting and conveying goods, wares and merchandise for hire in and throughout the city of Chicago and adjacent territory, going in some instances as far as thirty miles from the city; that it employs a large number of men and teams for the collection, transportation and delivery of said goods, usually in the form of packages, crates, boxes and bags; that the great bulk of its business is done with regular shippers and customers on express contract; that it does not observe the ordinance rates for the transportation of goods; that defendant has no particular rate or schedule of rates, but deals with each customer separately in that regard; that its customers are mostly wholesale houses, factories and department stores, which deliver their goods to customers and dealers through defendant company; that some shippers deliver their goods to the warehouses of defendant company; that from others the goods are collected by wagons which make daily runs through the wholesale district in the city collecting goods for shipment; that it is the universal practice of defendant to give shippers, on receipt of goods, a written receipt designating the number and character of the pieces delivered and the names of the consignors;

that a written record is then made by enumerating all pieces
received and the names of the consignors and consignees;
that the goods are then divided and classified with reference
to their destination and separated accordingly; that all goods
delivered from the central warehouse are made up into loads
and carried on regular runs or delivered to their destination,
the driver on each wagon having a written record, known as
delivery sheets, showing name of shipper and consignee,
nature of package, etc., said delivery sheet being signed by
the several consignees and retained as evidence of delivery;
that other loads of goods are made up at the central ware-
house, known as 'through loads,' which are taken directly
to the outlying distributing points, and from there are clas-
sified and turned over to the several delivery wagons of de-.
fendant running out from said delivery station; that de-
fendant in all of its work of collecting, transporting and
delivering goods has regular runs and routes for the pickup
and delivery wagons; that defendant, besides the work done
for regular customers, carries goods, wares and merchan-
dise for hire in the city of Chicago for any person who may
apply for such service where the work can be done by de-
fendant's wagons on their regular runs.　On these regular
trips the wagons pick up parcels or anything on the route,
and all work not for regular contract customers is by special
agreement beforehand as to price of service; that most of
the wagons employed in making deliveries within the city
pick up transient business along their routes when they
have orders from the company's office to do so, and not
otherwise; that defendant only accepts such transient busi-
ness as is offered to it and which it can handle with its
regular business without inconvenience; that when it does
accept goods for transportation from transient or unknown
persons it makes a special agreement as to the price which
it shall charge for the service and for such work it does not
follow or observe the ordinance rates; that defendant's main
office in the city of Chicago is located on the second floor of
its building at 39 West Adams street, where defendant has
a sign which reads, 'Johnson Express Company,' and that

similar signs are on defendant's other offices and on all its wagons; that defendant does not at its offices accept or solicit business from strangers, except as aforesaid; that defendant's drivers, employees and agents do not solicit goods on the street; that defendant's wagons have no public stands on the street, or in other public places, where they stand and wait for business generally; that a large number of defendant's wagons carry goods from points within the city to points without and *vice versa,* and that a number of defendant's wagons are engaged in carrying goods wholly within the city; that defendant employs a great many drivers in the city of Chicago and adjacent territory, and often finds it necessary in the conduct of its business, owing to the constantly changing personnel of its drivers, to shift said drivers and place them on different wagons and different routes. It is further stipulated that defendant had no license for operating said wagons or any of them during the year A. D. 1905."

Appellee introduced in evidence sections 2325, 2326, 2331, 2332 and 2346 of article 3, Revised Municipal Code of Chicago, as follows:

## "ARTICLE III.

### "Public Carts, Express Wagons, Furniture Vans, Trucks, Drays, etc.

2325. Public Carts Defined. Every express wagon, furniture van, cart, truck, dray, wagon or other vehicle drawn by one or more horses or other animals, which shall be kept, used, operated, driven or employed for the purpose of transporting or conveying bundles, parcels, furniture, trunks, baggage, goods, wares, merchandise or other articles within the city for hire or reward, shall be deemed a public cart within the meaning of this article, and every such vehicle so described and defined herein as a public cart shall be deemed such whether employed or hired from any public stand or from any street or public way, or from any private barn, office or other place in the city. The place where any such public cart is hired or employed shall not determine whether such vehicle is a public cart, but the business in

which such cart is engaged while on the streets and public ways of the city shall determine the character of such vehicle. It shall be immaterial in determining the character of any vehicle whether the driver or person in charge or control of any such vehicle solicits custom or accepts employment therefor from any public office or private place, or from or along any street or public way in the city; Provided, however, that nothing herein contained shall be held to require a license for any vehicle or vehicles rented to any person or corporation for the purpose of transacting the business of such person or corporation, solely, but if any such vehicle be employed in and about the business of more than one person or corporation for the purpose of transporting or conveying any of the articles hereinbefore in this section described, in such case any such vehicle shall be considered a public cart.

"2326. All Public Carts to be Licensed. No public cart as defined in the preceding section drawn by one or more horses or other animals, shall be used anywhere within the city for the transporting or conveying of bundles, parcels, furniture, trunks, baggage, goods, wares, merchandise or other articles for hire or reward unless such public cart be licensed as hereinafter provided.

"2331. Metal Plate with License Number on Public Cart. Every public cart licensed under the provisions of this article shall have securely fastened on the outside, on each side of such vehicle so licensed, in a conspicuous place, so that the same may be easily seen, a metal plate not less than eight inches long and four inches wide, on which shall be stamped a number corresponding to the license number of such public cart, and also the words 'Chicago Public Cart,' together with the year for which the license is issued. If such license is issued for a one-horse public cart, there shall be stamped upon such metal plate the word 'Single.' If for a public cart to be drawn by two or more horses, there shall be stamped upon such place the word 'Double,' and the metal plates issued for one-horse vehicles shall be of a different color and design from the metal plates issued for public carts to be drawn by two or more horses, during each license year. Such metal plates shall be obtained from the city clerk, and during each license year such plates shall be of a different color from that used for such plates during the pre-

ceding year, and shall have stamped thereon the year for which such plates are issued. At the expiration of the period for which such public cart is licensed the metal plates so fastened upon such public cart shall be removed therefrom, and no public cart shall be permitted to be used without the proper metal plate provided for in this article affixed thereto, or with any metal plate for a license period or year other than the license period or year during which such metal plate is affixed to such public cart.

"2332. Operating Unlicensed Public Carts.—Penalty. Any person or corporation who shall keep, use or operate; or be in charge, possession and control of, or cause to be kept, used or operated upon any of the streets or public ways of the city any public cart, or vehicle coming within the description of a public cart, as defined in this article, which has not been licensed in accordance with and pursuant to the provisions of this article, or who keeps, uses or operates or causes to be kept, used or operated any such public cart or vehicle in violation of any of the provisions of this article, shall be fined not less than five dollars nor more than one hundred dollars for each offense, and each and every day on which any such person or corporation shall so keep, use or operate, or cause to be kept, used or operated, any such public cart or vehicle after the first offense, shall constitute a separate and distinct offense.

"2346. Penalty. Any person violating any of the provisions of this article shall be fined not less than five nor more than one hundred dollars for each offense."

LAMBORN & GUERNSEY, for appellant.

HOWARD S. TAYLOR and JAMES DONAHOE, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

When the sections of the ordinance were offered in evidence appellant objected on the grounds, first, that the ordinance is invalid; and second, that appellant is not amenable to the ordinance. The objections were overruled by the court and the appellant preserved its exceptions.

The contentions of appellant are that it is not a common carrier, and that the ordinance has no application to it, that

the ordinance is invalid, and on these grounds the judgment should be reversed.

We have examined with care the authorities cited by appellant upon the question as to who are common carriers, and without quoting at length from the authorities the definitions given or the essential characteristics of common carriers, our conclusion is that appellant, under the law and the facts shown by the record, is a common carrier of goods, wares and merchandise for hire in and throughout the city of Chicago.

The invalidity of the ordinance is urged upon the following grounds: First, the city of Chicago has no power under its charter to license or tax other than common carriers; second, the ordinance attempts to delegate the power to license to a board of inspectors, and this power cannot be delegated; and third, the ordinance operates unfairly and unequally upon the same class of persons, discriminating in favor of certain carriers and against others, and it is unreasonable and oppressive.

The first of these contentions as to the power of the city is conceded by counsel for appellee and is disposed of so far as this case is concerned by what we have said above in holding that appellant is a common carrier.

The second ground upon which the invalidity of the ordinance is urged is predicated upon the provisions of section 2330.

The evidence in this case clearly shows a violation by appellant of sections 2325, 2326 and 2332 of the Revised Municipal Code of Chicago of 1905. These sections are therefore primarily before the court in this case, and it may well be doubted whether appellant in this case can question the validity of section 2330, which under the evidence is not involved in the controversy. And yet, no inconsiderable portion of appellant's argument on the validity of the ordinance is based upon the provisions of that section, which relate to the application for and the securing of a license as a driver of a public cart.

The evidence shows that appellant is a corporation and

Johnson Express Co. v. City of Chicago.

that it could not actually drive a public cart.   The evidence does not show that appellant ever made an application to anyone, or to any board or municipal authority, for a license to drive a public cart, nor does it show that appellant has been refused such a license or that it has been so licensed. The evidence does not show that appellant has set forth its qualifications for a driver of a public cart in any manner provided for in said section.   In our opinion, therefore, the provisions of that section are not material or relevant to the issue and question before the court.

In Gundling v. City of Chicago, 176 Ill., 340, there was a stipulation of facts showing that appellant was conducting a business requiring a license, but without a license.   In that case the court held that one violating an ordinance imposing a license fee, who has never been refused a license, is not in a position to raise the question that the ordinance is invalid for delegating to the mayor the discretionary power of granting or refusing such license.   At page 350 the court say:

"The appellant, however, is not in position to raise this question from the facts appearing in this record.   He was not an applicant for a license, which had been refused him, but was before the court admitting that he had violated an ordinance of the city of Chicago, duly passed and published, and denying the right of the city to adopt such ordinance regulating the sale of cigarettes.   He is not in a position to invoke the judgment of this court as to his right to a license, nor is that question before us."   See also Harbaugh v. City of Monmouth, 74 Ill., 367, 370.

To the extent, therefore, that appellant's arguments and contentions are based on the provisions of section 2330 they must be regarded as attempting to raise for decision questions which are immaterial, and to invoke the judgment of this court thereon without the right so to do on this record. And the same may be said in regard to the contentions founded on sections 2335, 2339, 2340 and 2342, for the same principle of law is applicable to them, under the facts shown by the record.

The remaining question presented is, whether or not the ordinance operates unfairly and unequally upon the same class of persons, discriminating in favor of certain carriers and against others, and is therefore unreasonable and oppressive and void.

It is urged that the definition of a "public cart" contained in section 2325 is too broad and includes those who are not common carriers.

No evidence was adduced on the trial, apart from the ordinance itself, so far as the record shows, tending to prove any unreasonableness or discrimination in the ordinance. We must therefore pass upon the question as it is presented by the provisions of the section referred to.

After defining what shall be deemed public carts within the meaning of the ordinance, section 2325 provides in substance that every such vehicle shall be deemed a public cart whether employed or hired from any public stand or public street or way, or from any private barn, office or other place in the city; that the place where any such cart shall be hired or employed shall not determine the character of the vehicle, but the business in which such cart is engaged while on the streets and public ways of the city shall determine its character. The section then provides that nothing therein contained shall be held to require a license for any vehicle rented to any person or corporation for the purpose of transacting the business of such person or corporation solely, but if any such vehicle be employed in and about the business of more than one person or corporation for the purpose of transporting or conveying any of the articles described in the section, such vehicle should be considered a public cart.

According to the abstract of record article 3 and one section of article 4 of the ordinance were offered in evidence. An examination of the provisions so offered, particularly of section 2325 under consideration, discloses clearly a purpose and intent of the city council to regulate common carriers of goods and merchandise for hire in the city. While the section under consideration enumerates the vehicles and attempts to define what shall be deemed public carts under

the ordinance, it expressly provides that "the business in which such cart is engaged while on the streets and public ways of the city shall determine the character of such vehicle." This, we think, sets up the legal definition of common carriers as the criterion by which the character of all vehicles carrying goods in the city of Chicago for hire or reward is to be determined under the ordinance. In our opinion the objection to the ordinance that it is class legislation because it exempts certain common carriers from its operation, is not well taken. The difference between keeping vehicles for hire and the keeping and operating of vehicles to carry goods for hire is quite apparent. The ordinance does not discriminate in favor of or against any particular class of common carrier so as to make an act done by one penal, while no penalty is imposed on the same act done by another under like circumstances. We are unable to see wherein it does not apply equally to all persons of the same class without discrimination.

Express power is conferred upon the appellee "to license, tax and regulate hackmen, draymen, omnibus drivers, carters, cabmen, porters, expressmen and all others pursuing like occupations, and to prescribe their compensation." Chapter 24, article 5, section 1, subdivision 42. The ordinance before us finds warrant in the above clause which is a part of the charter of appellee. The spirit of the ordinance is to bring the class of carriers therein named under the police regulations of the appellee. The ordinance is designed to operate upon those who hold themselves out as common carriers in the city for hire, and is a rightful exercise of the police power. Farwell *et al.* v. City of Chicago, 71 Ill., 269. "All presumptions are in favor of its reasonableness, and such presumptions must prevail, nothing to the contrary appearing on the face of the ordinance or from proofs." Standard Oil Co. v. City of Danville, 199 Ill., 50, 54. "It is therefore incumbent upon anyone who seeks to have them set aside as unreasonable to point out or show affirmatively wherein such unreasonableness consists." People *ex rel.* v. Cregier, 138 Ill., 401, 414.

The evidence of the violation of this ordinance is undisputed; and finding no reversible error in the record the judgment of the Criminal Court is affirmed.

*Affirmed.*