# Consumers Company, Appellees, v. City of Chicago et al., Appellants.

## Gen. No. 23,485.

1. APPEAL AND ERROR, § 1034*—*what judicial notice will be taken of on appeal.* The Appellate Court will take judicial notice of the increasing number of motor trucks used for carrying freight and merchandise on the streets in thickly settled communities and of the inherent danger to pedestrians from the operation of such vehicles on public highways.

2. AUTOMOBILES AND GARAGES, § 1*—*when ordinance regulating operation of motor trucks in streets will be sustained.* A municipal ordinance regulating the operation in the streets of motor trucks for the transportation of freight and merchandise will be sustained if there exist substantial reasons for its enactment and its more important provisions, without subjecting it to critical examination and analysis.

3. AUTOMOBILES AND GARAGES, § 1*—*what is power of council as to passage of ordinance regulating use of motor trucks on streets.* A city council has power to pass an ordinance for the protection of persons lawfully on the streets from the risk of injury or death from motor trucks being operated on the streets.

4. AUTOMOBILES AND GARAGES, § 1*—*what considered ·in passing upon reasonableness of ordinance regulating operation of motor*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*trucks on streets.* In passing upon the reasonableness of an ordinance regulating the operation of motor trucks on city streets, regard will be had to the fact that the council had to deal with a special and, in the main, new object.

5. MUNICIPAL CORPORATIONS, § 93*—*who has burden of proof to show unreasonableness of ordinance.* The burden is on one attacking an ordinance on the ground that it is unreasonable to show clearly and affirmatively that it is unreasonable.

6. AUTOMOBILES AND GARAGES, § 1*—*what is duty of council in passage of ordinance regulating use of motor vehicles on streets.* In the exercise of its power to legislate in a reasonable and fair manner for the protection of people using the streets against danger of injuries from colliding with motor vehicles operating in the streets, it is the right and duty of the council to provide such protection with as little expense and annoyance to the owners and operators of such vehicles as possible.

7. AUTOMOBILES AND GARAGES,. § 1*—*when ordinance regulating use of motor trucks on streets does not provide for unreasonable classification.* If the classification of motor trucks in an ordinance regulating their operation in- the streets is not capricious and arbitrary but is based upon a reasonable theory, the ordinance will not be held invalid as unreasonable.

8. AUTOMOBILES AND GARAGES, § 1*—*when motor vehicle fender ordinance is not invalid as providing for an unreasonable classification.* The provision of a fender ordinance requiring fenders to be attached to a class of motor trucks of a freight-carrying capacity is not invalid on the ground that it provides an unreasonable classification.

9. AUTOMOBILES AND GARAGES, § 1*—*what is test in determining validity of ordinance requiring fenders on certain class of motor trucks.* In determining the validity of an ordinance requiring fenders on a certain class of motor trucks, the test is not whether the council acted with the highest degree of wisdom in drafting the ordinance, but whether there is a reasonable basis for its provisions.

10. AUTOMOBILES AND GARAGES, § 1*—*what is reasonable basis for classification of motor trucks in fender ordinance.* There is such a substantial distinction between freight-carrying and passenger-carrying motors and between the operation of them as to furnish a reasonable basis for the classification of motor trucks on such lines in an ordinance providing for the use of fenders on motor trucks using the streets.

11. AUTOMOBILES AND GARAGES, § 1*—*when evidence insufficient to show invalidity of fender ordinance.* An affidavit, made on in-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Consumers Co. v. City of Chicago, 208 Ill. App. 203.

formation and belief, that owners of motor trucks which exceed a certain carrying capacity will not be able to procure fenders for them as required by a city ordinance is not sufficient ground for holding the ordinance invalid where the affidavit is directly contradicted by other affidavits.

12. AUTOMOBILES AND GARAGES, § 1*—*when motor fender ordinance not invalid as discriminating in favor of makers of fenders.* The fact that before the passage of a motor fender ordinance certain tests of fenders were made, and that the ordinance provides that where such tests comply with all of its provisions a certificate of efficiency shall be issued to the makers, does not render the ordinance invalid as unfairly discriminating in their favor.

13. AUTOMOBILES AND GARAGES, § 1*—*when motor truck fender ordinance does not dispense with further tests of fenders after change.* The provision in an ordinance requiring fenders on motor trucks, *held* not to dispense with further tests of fenders which have been changed after having been submitted for test.

14. MUNICIPAL CORPORATIONS, § 90*—*when ordinance not invalidated as a whole because of invalidity of part.* The invalidity of a provision in a motor fender ordinance dispensing with tests of fenders which have been changed after once undergoing the test does not invalidate the whole ordinance.

15. AUTOMOBILES AND GARAGES, § 1*—*when provision in ordinance relative to height of fender for motor vehicles is not unreasonable.* The provision in a motor fender ordinance that a "fender of a projecting type shall be provided with mechanism for varying the height of at least the lower portion of same from a minimum distance of 4½ inches to not less than 10 inches above the road surface" is not unreasonable and does not render the operation of such trucks impracticable.

16. AUTOMOBILES AND GARAGES, § 1*—*when motor fender ordinance is not invalid as conferring unreasonable power upon municipal executive board as to testing fenders.* The provisions of a motor fender ordinance conferring power upon a municipal bureau to supervise certain prescribed tests of fenders, such fenders to be approved by the superintendent of police after the tests are made, does not confer an unreasonable and arbitrary power upon an executive board and does not give the bureau power to prevent the free and equal use of the streets.

17. AUTOMOBILES AND GARAGES, § 1*—*when motor truck fender ordinance is not invalid as imposing double tax on owners.* The provision in an ordinance requiring that motor trucks of a specified class be equipped with approved fenders, *held* not to impose a double tax on owners of vehicles subject thereto by reason of the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

fact that it requires persons, firms and corporations desiring a test for a fender to deposit the sum of $200 to cover the expense of such tests, but such provision is merely a regulation.

18. AUTOMOBILES AND GARAGES, § 1*—*what is power of cities to adopt motor vehicle fender ordinance.* Under the power conferred upon cities to regulate the use of the streets, they may adopt an ordinance requiring certain classes of motor vehicles to be equipped with approved fenders.

19. APPEAL AND ERROR, § 1712*—*when point not argued deemed waived.* On appeal, a point which is merely suggested in the statement of facts and is not supported by authorities nor urged on the argument is deemed to have been waived.

Appeal from the Circuit Court of Cook county; the Hon. FREDER-ICK A. SMITH, Judge, presiding. Heard in this court at the October term, 1916. Injunctional order reversed. Opinion filed November 5, 1917. Rehearing denied November 18, 1917.

SAMUEL A. ETTELSON and SEARS, WILEY & SHERMIN, for appellants.

BUTZ, VON AMMON & JOHNSTON and WILLIAM A. JENNINGS, for appellees.

MR. JUSTICE DEVER delivered the opinion of the court.

This is an appeal from an interlocutory decree entered by the Circuit Court of Cook county on May 26, 1917.

The bill of complaint prayed for an injunction to restrain the City of Chicago from the enforcement of an ordinance known as the Fender ordinance, which was passed to take effect and be in force January 1, 1917. On motion of counsel for complainant the court below entered an interlocutory order of injunction as prayed for in the bill of complaint.

The ordinance in question (with the exception of sections 4 and 5 thereof) is as follows:

"Section 1. It shall be unlawful for any person, firm, or corporation to use and operate on the streets,

alleys or public places within the City of Chicago, any motor truck of fifteen hundred pounds capacity or more, which for the purpose of this ordinance shall be understood to be a motor driven commercial vehicle designed and used for the purpose of conveying freight, goods, wares, merchandise and machinery, or any or all of the same, unless such motor truck is provided with a fender complying with the requirements of Section 2 hereof, securely fastened to the front end of same and designed so as to afford an effective means of preventing injury to the life or limb and promote the health and safety of pedestrians and other persons on the public streets, alleys or ways, by reason of the use and operation of such heavy and powerful motor truck, as aforesaid, and of a type approved by the General Superintendent of Police as hereinafter provided for.

"Section 2.    Every such fender to be so used and attached to such motor truck shall be so constructed that it shall comply with the following specifications: The maximum projection in front of truck when ready for service shall not exceed 24 inches.    The projections outside of the rims of the front wheels of the truck shall be not less than 2½ inches nor more than 3½ inches.    The diagonals from the corners of chassis to the outermost projections of the respective corners of the fender shall not exceed 26 inches.    The protective height of the fender shall be such that no portion of a person struck by same can come in contact with any portion of the vehicle other than the fender or the mudguards.    The flexibility shall be sufficient to reasonably reduce the shock of impact, and for this purpose the material used shall have a resiliency equal to that of steel wire cable three-eighths of an inch in diameter or flat steel wire five-eighths of an inch wide and three-thirty-seconds of an inch thick, and if netting is used it shall have a mesh of not less than three and one-half inches from center to center; provided that if leather, canvas or other substance affected by the weather is used it must be amply protected from the weather. The width of the basket or shelf for picking up a person struck by the fender shall be at least 18 inches,

and the covering net, filler or other material of which the same is constructed shall be securely riveted, welded or brazed to the frame work of the fender. The side and top edges of vertical portions of the fender protecting the front of the truck shall be rounded with a radius of not less than 3 inches. A fender of a projecting type shall be provided with mechanism for varying the height of at least the lower portion of same from a minimum distance of 4½ inches to not less than ten inches above the road surface. Cast iron shall not be used in any portion of the fender, and all materials other than metal shall be amply protected from the weather. The strength of the parts shall be such as not to be deranged by ordinary traffic service and sufficient to pick up, without failing in any of its parts, when running at the maximum speed permitted by law, a person weighing two hundred pounds. The fender shall not depend for its protective efficiency on either manual, pedal or automatic operation, and such means if applied shall be used only to increase its efficiency.

"Section 3. No type of fender shall be approved by the General Superintendent of Police unless it has been subjected to the tests herein prescribed under the direction of the Clerical, Mechanical, and Inspection Bureau of the Department of Police and has developed the standard of efficiency required by this ordinance, or unless it shall be hereafter subjected to such tests and shall develop the required efficiency. The said bureau shall judge the efficiency of the fenders tested in accordance with the provisions of this ordinance and report the same to the General Superintendent of police. All tests shall be under the direction of the said Clerical, Mechanical and Inspection Bureau, and the head of said bureau shall make all arrangements, based on the application for same, and supervise the furnishing of materials and appliances, but the said bureau shall inspect all such materials and appliances and pass on the sufficiency of same and shall designate the places where, the time when, and the conditions under which said tests shall be made. Any person, firm or corporation desiring such a test

Consumers Co. v. City of Chicago, 208 Ill. App. 203.

for a fender shall make application therefor on a form to be furnished by the General Superintendent of Police and shall deposit with the City Collector the sum of two hundred dollars to cover the expense of such tests.   The applicant shall also furnish a full description of the fender to be tested and the material used therein, and three sets of blue prints of working drawings of the fender of a size to be designated by the said bureau, and the Department of Police shall cause three photographs to be taken of the fender attached to the truck and ready for the tests.   One set of such blue prints and photographs shall be for the use of said bureau, one set for the files of the Department of Police, and one set shall be attached to the certificate of approval in case the fender is approved.''

(Sections 4 and 5 contain elaborate provisions for the making of tests required under the ordinance.)

''Section 6.   As soon as a test is completed a report showing the results of same shall be prepared by the said Clerical, Mechanical and Inspection Bureau of the Department of Police, one copy of which shall be delivered to the applicant and the other to the General Superintendent of Police.   In all cases where the protective efficiency of a fender shall meet the requirements of the tests herein prescribed and it conforms to the mechanical requirements herein set forth, the said bureau shall state in such report that the requirements of the tests have been met and that the applicant is entitled to a certificate of approval.   Upon the receipt of such report showing that the applicant is entitled to same, the General Superintendent of Police shall issue a certificate of approval in such form as he may prescribe.   In all cases where the tests herein provided for have already been made on any fender submitted for test, under the direction of the Clerical, Mechanical and Inspection Bureau of the Department of Police, and the said tests, according to the written report made to the General Superintendent of Police, have demonstrated the protective efficiency of such fender to be equal to that required for approval as

prescribed herein, such fender so tested shall be allowed the percentage fixed herein as it may be entitled to same according to said report, and the General Superintendent of Police shall issue such certificate of approval without requiring further tests.

"Section 7. The issuance of such certificate of approval to any applicant for same shall permit the use of the fender so tested and approved on all vehicles requiring same under the provisions of this ordinance, and such approval shall extend to all fenders of like pattern and materials made, sold, leased, loaned, rented or attached by the person, firm or corporation receiving such certificate of approval or his, their or its assigns; and to the end that no counterfeit or imitation shall be substituted for such fender, the City Collector shall issue name plates in such numbers as may be required containing the number of the certificate, the name of the fender, the words 'Approved by the City of Chicago,' and the date of the approval certificate. Such plates shall be sold only to the person, firm or corporation receiving such certificate, or his, their or its assigns, or the duly authorized agent of same, and the price of same shall be fifty cents for each plate. All fenders used on the streets, alleys, or public places of the city attached to the vehicles requiring same under the provisions of this ordinance shall bear the name plates as provided for herein, which shall not require renewal as long as used on the fender on which it is originally placed, but which shall not be transferred from one fender to another. Any fender used under the provisions of this ordinance may be condemned by the Clerical, Mechanical and Inspection Bureau of the Department of Police when the same shall become damaged, corroded or otherwise defective from wear or use to such an extent as to impair its efficiency, and when so condemned it shall be replaced by another fender which is in good condition. Fenders shall be attached and used only on motor trucks of the size for which they have been approved.

"Section 8. In case the manufacturer of approved fender desires to make any changes in the construc-

tion of such approved fender, he shall file with the Clerical, Mechanical and Inspection Bureau of the Department of Police a description of such proposed changes, together with blue prints of full sized working drawings for same. The said bureau may approve or reject such changes from the original pattern or type submitted for tests, and, in case of rejection, no such altered type of fender shall be approved unless tests of same in accordance with the provisions of this ordinance are made.

"Section 9. Any person, firm or corporation that shall use or operate any motor truck of the kind described in Section 1 hereof contrary to the provisions of this ordinance, or that shall use or attach a name plate of the kind provided for herein on a fender to be used on the streets of the city which has not been approved, or that shall use on such motor truck operating on the streets of the city a fender of a smaller size than that required for the size of motor truck to which it is attached, or that shall use a fender which otherwise conflicts with or fails to comply with the provisions of this ordinance, shall be fined not less than twenty-five dollars nor more than two hundred for each offense; and a separate and distinct offense shall be regarded as having been committed for each and every day on which such violation of the provisions of this ordinance shall continue."

It is urged on behalf of the complainant that the ordinance in question is invalid and unenforceable in that it unreasonably and arbitrarily discriminates:

(a) Between motor trucks of fifteen hundred pounds or more capacity and motor trucks of less than fifteen hundred pounds capacity;

(b) Between motor trucks of fifteen hundred pounds or more capacity used for the purpose of carrying freight and motor trucks of similar capacity used for the purpose of carrying passengers; and

(c) Between motor trucks used for the purpose of conveying merchandise and automobiles used for the purpose of carrying passengers.

It seems to be conceded by counsel that the City

Council of the City of Chicago had power to pass an ordinance requiring the placing of fenders upon automobiles operating on the streets of the city, but they assert that in its exercise of this power the city council could not act unreasonably, capriciously or arbitrarily; that the ordinance in question is invalid for the reason that the classifications provided for therein were unreasonable and discriminatory.

In the recent case of *Biffer v. City of Chicago*, 278 Ill. 562, the Supreme Court had before it a question of the validity of an ordinance of the City of Chicago which prescribed regulations for the sale of firearms within the city. It was held that:

"When the city council considers some occupation or thing dangerous to the health of the community and in the exercise of its discretion passes an ordinance to prevent such a danger, it is the policy of the law to favor such legislation. Municipalities are allowed a greater degree of liberty of legislation in this direction than in any other. The necessity for action is often more urgent and the consequences of neglect more detrimental to the public good in this than in any other form of local evil. * * * If the health of the public is indispensable to the city, surely the safety of citizens and protection against being maimed or killed are equally indispensable, and a like liberal rule of construction should be adopted."

The ordinance under consideration here is an attempt by the city council to legislate in favor of public safety. The appearance upon the public streets of motor trucks is of relatively recent date. This is particularly true of the transportation of freight and merchandise upon the streets by means of such motor trucks. The court is permitted to take judicial notice of the increasing number of such motor trucks upon the streets in thickly settled communities and of the inherent danger to pedestrians from the operation of these vehicles on the public highways. Under these

circumstances it would not be surprising if the ordinance in question did not meet in all particulars the exigencies of motor vehicle traffic in the streets, and it is not required by the law under such circumstances that the action of the city council be too critically examined or analyzed. It is sufficient if there exists substantial reasons for the enactment by the council of the ordinance and for its more important provisions. We think it clear that the city council had power to pass an ordinance providing for the protection of persons, lawfully upon the streets of the City of Chicago, from danger of injury, or death, by being run down by motor trucks. Under the circumstances existing at the time the ordinance was passed, the city council was called upon to deal with a special and, in the main, a new object, and these facts should be kept in mind when the ordinance is examined for the purpose of determining its reasonableness. In *People v. Village of Oak Park,* 266 Ill. 365, it was held that it was incumbent upon a party attacking an ordinance as being unreasonable to affirmatively and clearly show wherein such unreasonableness consists.

In *Biffer v. City of Chicago, supra,* the court said:

"Counsel for defendants in error insist that because this ordinance permits sales to be made when the articles are to be delivered or furnished outside the City of Chicago such classification is unreasonable and therefore the ordinance should be held invalid. In cases involving the validity of statutes or ordinances all reasonable doubts are to be resolved in favor of upholding the legislation establishing a classification. Such ordinances or statutes are not unconstitutional because they result in some practical inequalities. (*Orient Ins. Co. v. Daggs,* 172 U. S. 557; *Minnesota Iron Co. v. Kline,* 199 id. 593.) In exercising its power to make classifications for the purpose of enacting laws or ordinances over matters within the jurisdiction of the State or municipal authorities, a legislative

body is permitted a wide range of discretion. The question of classification is primarily for the legislative body, and only becomes a judicial question when the legislative action is clearly unreasonable. (*Magoun v. Illinois Trust & Savings Bank*, 170 U. S. 283.)"

The single purpose of the ordinance in question was to prevent injuries to persons using the public highways, and it was sought to compel the attachment to motor trucks of fenders, which, it was thought, would in some measure remedy an evil resulting from the operation in the streets of unprotected, heavy motor trucks.

It is insisted that the ordinance unreasonably and arbitrarily discriminates between motor trucks of 1,500 pounds or more carrying capacity and those of a lower carrying capacity; between motor trucks of a carrying capacity of more than 1,500 pounds used for carrying freight, and motor trucks of similar capacity used for the purpose of carrying passengers, and also between motor trucks used for the purpose of conveying merchandise and automobiles used for carrying passengers. In the affidavits filed in support of the bill it is stated that there are 11,000 freight-carrying motor trucks being driven on the streets of the City of Chicago and that about 100 motor trucks are likewise used for carrying passengers; that 4,000 of the freight-carrying motor trucks have a carrying capacity of less than 1,500 pounds; that about 4,000 more of the motor trucks have a carrying capacity of between 1,500 and 5,000 pounds, and also that approximately 1,600 of the 11,000 motor trucks have a carrying capacity of more than 5,000 pounds.

It is further stated in the affidavits that all motor driven automobiles and motor trucks are of the same general mechanical construction; that many of the so-called motor trucks are in fact what is known as converted passenger automobiles which have been refitted with a freight-carrying body.

We do not think there is much doubt that the city council, as stated, had ample power to legislate in a reasonable and fair manner for the protection of people using the streets of the city against danger of injuries from collisions with motor vehicles operating in the streets. In the exercise of this power it was the right and duty of the city council to provide such protection with as little expense or annoyance to the owners and operators of motor vehicles as possible, and if the classification of motor trucks provided by the ordinance can be said to have been based upon any reasonable theory, and are not in their nature capricious or arbitrary, it must be held that in this particular the ordinance in question is not invalid.

In *Metropolis Theater Co. v. City of Chicago,* 246 Ill. 20, the Supreme Court, in passing upon the validity of an ordinance which provided for a classification of theaters in accordance with admission charged, said:

"We do not deem it necessary to review the numerous cases illustrating the discretion that may be exercised by legislative bodies in the classification of the subject of taxation. This entire subject has recently been reviewed by this court in *Harder's Storage Co. v. City of Chicago,* 235 Ill. 58, in which what is known as the Wheel Tax ordinance was involved. Under the principle announced in that case and the authorities therein reviewed we have no doubt of the validity of section 104 of the ordinance involved in this case."

It is provided in the ordinance that fenders were to be attached, in accordance with the provisions of the ordinance, to a class of motor trucks of a freight-carrying capacity of more than 1,500 pounds. It was asserted in certain affidavits that because of their weight and greater momentum the larger and heavier cars were a greater danger when operated in the public streets than the lighter motor vehicles, and that it was more difficult to bring to a sudden stop, or to otherwise manipulate a heavily loaded motor truck

than a lighter loaded freight motor truck or passenger automobile. We are inclined to hold that these facts gave reasonable basis for this classification in the ordinance. There is not much merit in the argument that there could in fact be but slight difference in these particulars in the operation of a motor 'truck of slightly more than 1,500 pounds capacity and one of a few pounds less carrying capacity. As a matter of fact, this conclusion is sound, but it is not a sound test by which to determine the reasonableness of this provision of the ordinance. If there be any merit in the contention that greater danger arises from the use and operation of the heavier as against the lighter class of motor trucks, the city council was warranted, in the exercise of a sound legislative discretion, and, in the nature of things, was necessarily compelled to indicate in the ordinance at some point a line which would classify the different freight-carrying motor vehicles so that the provisions of the ordinance would apply to that class which caused the greater danger to pedestrians.

The test is not whether we may be of opinion that the city council has acted with the highest degree of wisdom in drafting the ordinance in question. If it can be said that there is some reasonable basis for its provisions, then we have no power to substitute our judgment of the wisdom of such provisions for that of the city council.

The cases cited by counsel for complainant are distinguishable from the instant case. Some of those cases lay down the rule that ordinances which provide for a classification such as the one in question must have a basis in sound reason for such classification, and this is in accord with what has been said.

It is also insisted that the classification made in the ordinance as between freight-carrying and passenger-carrying motor trucks is unreasonable and dis-

criminatory. In the affidavits filed in support of the answers it is stated that there is a substantial, recognizable difference between these classes of vehicles; that large passenger vehicles are limited in carrying capacity to a certain number of persons; that they cannot be run at as high rate of speed as trucks carrying equal loads which do not carry passengers; that in operating the passenger vehicles regard must be had to the comfort and safety of passengers; that they are operated on boulevards and fixed routes familiar to the operator, and it was urged in oral argument that the court will take judicial notice of the fact that such passenger vehicles usually slacken or stop at street intersections to take on or let off passengers. Some of these statements are denied in other affidavits, but we are of the opinion that there is a substantial, recognizable distinction in these classes of motor vehicles, and that while such differences may not be inherent in their mechanism or equipment, we think they are of such character as to furnish a reasonable basis for the classification which is complained of.

In *Johnson Exp. Co. v. City of Chicago*, 136 Ill. App. 368, the court, in deciding whether an ordinance discriminated in favor of certain carriers against others, said:

"While the section under consideration enumerates the vehicles and attempts to define what shall be deemed public carts under the ordinance, it expressly provides that 'the business in which such cart is engaged while on the streets and public ways of the city shall determine the character of such vehicle.' This, we think, sets up the legal definition of common carriers as the criterion by which the character of all vehicles carrying goods in the City of Chicago for hire or reward is to be determined under the ordinance."

It is urged that motor truck owners subject to the provisions of the ordinance will be unable to secure fenders for motor trucks of a carrying capacity

greater than 2½ tons. This statement, which is made in an affidavit, is made on information and belief and is directly contradicted by other affidavits, one being an affidavit of a manufacturer who states he has, since the passage of the ordinance, been able to provide from 1,500 to 2,000 fenders a month such as are required by the ordinance.

It is further insisted that certain tests of fenders were made prior to the passage of the ordinance, and that the ordinance provides that where such tests comply with all the provisions of the ordinance a certificate of efficiency should be issued to the makers of such fenders, and that this provision unfairly discriminates as between classes of fender makers. It is difficult to see how this provision of the ordinance discriminates in favor of, or against, any class of fender manufacturers. As to all makers the ordinance provides that their fenders shall be submitted to the tests provided by the ordinance. This provision, if fairly applied, would not operate to give a privilege to any particular class of makers, as all such are required to submit their fenders to precisely the same tests.

It is said that section 8 of the ordinance discriminates in favor of a manufacturer who has made a change in a fender, which change has been approved by the Police Department, and that under the language of the section it is not required to test a fender so changed as otherwise provided by the ordinance; there is some basis in the structure of this section of the ordinance for this contention of counsel for complainants. We are inclined to hold, however, when the whole subject-matter of the ordinance is taken into consideration, that the language of the last clause of the last sentence of this section must be held to require a test under the ordinance of every such improved fender. The language of the last sentence of this section is as follows:

"The said bureau may approve or reject such changes from the original pattern or type submitted for tests, and, in case of rejection, no such altered type of fender shall be approved unless tests of same in accordance with the provisions of this ordinance are made."

But whatever may be said of the ambiguity appearing in this section, and even though the section be held invalid, this holding would not result in rendering the entire ordinance void.

A provision of the ordinance is as follows:

"A fender of a projecting type shall be provided with mechanism for varying the height of at least the lower portion of same from a minimum distance of 4½ inches to not less than 10 inches above the road surface."

It is insisted that this provision is unreasonable and that if insisted upon it will be practically impossible to operate motor trucks. It will be noted that the ordinance provides for mechanism that will permit the raising and lowering of the fender within a distance of from 4½ inches to 10 inches above the road surface. We think this provision is reasonable and that there is not much merit in the contention that fenders complying with the terms of the ordinance "would dig into, and come in contact with, the surface of the streets, country roads, etc." It is evident that the purpose of this provision is to permit the use of fenders in such manner as to avoid the things that it is said will interfere with the operation of motor trucks. Nor do we think there is merit in the contention that motor truck operation will become impracticable if fenders are attached to the front end of such trucks, due to traffic congestion in the streets of Chicago. Adding 2 feet to the length of the trucks will no doubt cause some inconvenience and annoyance to the operator of such trucks, but we do not think this reason sufficient to invalidate the ordinance.

The statements in certain affidavits are based

upon records in the coroner's office of Cook county. These records tend to show that the number of fatal accidents from collisions with auto trucks is relatively much greater than that occurring from collisions with other classes of automobiles, and while these records give no definite information as to the proportion of accidents resulting from the operation of motor trucks, as between light and heavy trucks, we are not disposed to deny the conclusions of an affiant who states that the heavier trucks are much more dangerous to pedestrians traveling in the streets.

It is asserted that the ordinance is unreasonable and oppressive in that it confers ''an arbitrary discretion upon an executive board to fix the character of an offense of private individuals,'' and further, that it reposed ''a power in private individuals to prevent the free and equal use of the city streets.''

The ordinance does not confer an unreasonable and arbitrary power upon an executive board to fix the character of an offense as urged. The main authority conferred by the ordinance upon the clerical, mechanical and inspection bureau of the department of police is to supervise the tests for fenders as provided in the ordinance. The ordinance requires that the protective efficiency of each fender submitted for a test is to be determined by no less than 168 dummy tests. The provisions relating to this subject are elaborate and they require, under the supervision of the bureau, that every fender submitted for test shall show a protective efficiency in accordance with the percentages fixed in the ordinance.

The supervising bureau has no arbitrary power under the ordinance. The principal duties conferred upon it are the supervising of the tests as provided in the ordinance. It has no discretion in the matter of requiring tests. The ordinance provides that fenders shall be approved by the general superintendent of

police after they have been subjected to the tests required by the ordinance. The inspection bureau makes report directly to the department of police, and it has no duty to perform except to act honestly and fairly in requiring only such tests and reporting thereon as are specified in the ordinance.

The ordinance does not give the inspection bureau the power to prevent the free and equal use of the city streets; nor is the ordinance in question one that imposes a double tax upon owners of vehicles subject to its provisions.

The instant case is widely different from the case of *City of Chicago v. Collins*, 175 Ill. 445, relied upon by counsel for complainants. The ordinance under consideration in the *Collins* case, *supra,* imposed a license fee upon vehicles using the streets, and it required that the license fee be held in a special wheel tax fund to be used solely for the repair of the city streets. The ordinance here under consideration provides a fee of $200, which fee is the estimated expense of making the elaborate tests provided for by the ordinance. It is not intended, as stated by counsel, that this $200 is to be paid "as a compensation" to permit an owner to use his trucks in his ordinary business. The ordinance requires that:

"Any person, firm or corporation desiring such a test for a fender shall make application therefor on a form furnished by the General Superintendent of Police and shall deposit with the the City Collector the sum of two hundred dollars to cover the expense of such tests."

This provision merely compels a payment of money by any person who submits a fender for test, and the amount required to be paid is to cover the expense of such test. Section 7 of the ordinance provides that where a certificate of approval of a particular kind of fender has been issued such approval shall extend to all fenders of like pattern and material, made, sold,

leased, loaned, rented or attached by the person, firm or corporation receiving such certificate of approval, or his, their, or its assigns. The ordinance does not seek to impose a tax upon persons whose fenders comply with the ordinance. It is purely a regulation and not a taxing measure. The city council would, of course, have no power to impose a double tax; but it has ample power, under the City & Villages Act, to regulate the use of the public streets, and we think that the ordinance in question was passed in the exercise of this last-mentioned power.

It is urged by counsel for complainant that the ordinance in question is unconstitutional because in violation of article II, sec. 2, and article IV, sec. 22, of the Constitution of the State of Illinois, and that therefore this court has no jurisdiction to hear and dispose of this appeal. Counsel have not submitted any authorities or argument in support of their position. The point is suggested in the statement of facts in the briefs filed by complainant; it is not otherwise urged upon our attention, and we think we are justified in regarding this point as being waived by the complainant.

The injunctional order of the Circuit Court appealed from is reversed.

*Injunctional order reversed.*