CHICAGO—FIRST DISTRICT—JANUARY, 1920.    387

Neuman v. Chicago and Northwestern Ry. Co., 216 Ill. App. 387.

## C. Neuman, Appellee, v. Chicago and Northwestern Railway Company et al., on appeal of Chicago and Northwestern Railway Company, Appellant.

### Gen. No. 24,752.

1. CARRIERS, § 199*—*what establishes prima facie case against final carrier for damage to goods.* Where property transported over the lines of several carriers is damaged en route, proof that the goods were delivered to the consignee by the final carrier in bad order establishes a prima facie case against such carrier, inasmuch as such carrier could protect itself by inspection when the goods were received, and the sources of evidence regarding where the blame rests are more accessible to the last carrier than they are to the shipper.

2. CARRIERS, § 199*—*who has burden of proof in action against connecting carriers for loss of goods.* Where a terminal carrier delivers a shipment of goods to a local drayman, who is the agent of the consignee, and there is a shortage in such goods when received by the consignee, it would not be incumbent on the railroad to show that the shortage occurred while the goods were in possession of the drayman, but the plaintiff consignee would have the burden of proving such fact, as the source of evidence regarding blame for the shortage rests with the drayman, and is quite as accessible to the consignee as to the railroad, if not more so.

3. CARRIERS, § 5*—*when transfer or drayage company is common carrier.* A transfer or drayage company which undertakes, for hire or reward, to transport from place to place the goods of those who employ it, is a common carrier.

4. CARRIERS, § 199a*—*what evidence establishes that transfer company was terminal carrier.* Where a consignment of goods handled by other carriers was delivered by a railroad to a transfer company which was a common carrier, the evidence established that such transfer company was the terminal carrier.

5. CARRIERS, § 199*—*burden of proof in action against connecting carriers for loss of goods.* In a suit by a consignee to recover for a shortage of goods, brought against the railroad which delivered the goods to a transfer company at the point of destination, where the plaintiff established that the goods were shipped in good condition and that the shortage was discovered when the goods were delivered by the transfer company, the burden was upon the plaintiff

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

to show that the shortage occurred while the goods were in the railroad's possession, or at least to show a presumption to that effect by showing that no loss was suffered while the goods were in possession of the terminal carrier.

6. CARRIERS, § 199a*—*when evidence insufficient to show loss of goods did not occur while goods were in hands of transfer company.* Evidence *held* insufficient to show that a shortage of goods did not take place while the goods were in the hands of a terminal carrier, a transfer or drayage company, there being no testimony of the draymen to the effect that nothing was taken from them while in their possession, and that they were received in the same condition as when delivered to the plaintiff consignee, which testimony would have contradicted witnesses for the railroad which was a connecting carrier.

7. CARRIERS, § 199a*—*when finding that loss of goods, delivered by railroad company to draymen, occurred while goods were in possession of former is against weight of evidence.* In an action for the loss of goods transported, while in the possession of a railroad company, which afterwards delivered such goods to draymen of the consignee, where all the witnesses for the railroad company testified that the boxes containing the goods were in good condition, and there was no evidence as to the condition of such boxes when received by the draymen, a finding that the shortage in the shipment occurred while the goods were in possession of the railroad company was against the manifest weight of the evidence.

Appeal from the County Court of Cook county; the Hon. J. J. COOKE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Reversed and remanded. Opinion filed January 28, 1920.

EDGAR R. HART and IRA C. BELDEN, for appellant; JAMES C. DAVIS, of counsel.

A. W. GLASKAY, for appellee.

MR. PRESIDING JUSTICE THOMSON delivered the opinion of the court.

By this appeal the defendant Chicago and Northwestern Railway Company seeks to reverse a judgment for $369 recovered by the plaintiff Neuman. The suit was an action on the case for damages caused by

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, sam topic and section number.

the alleged loss of certain clothing in course of shipment because of the negligence of the defendant carrier as charged by the plaintiff in his declaration. The Chicago Warehouse & Terminal Company was sued with appellant but was found not guilty by the jury.

The clothing involved was consigned by Flachs & Schetnitz of Chicago to the plaintiff at DeKalb, Illinois, on May 20, 1915. The consignment consisted of eighty suits of clothing packed in two cases. The cases were delivered by the consignor to Marks Express & Teaming Company, and by them on the same day turned over to the terminal company. On May 21, the latter company delivered the cases to the appellant. That night the cases left Chicago over the appellant's railroad reaching DeKalb at 2:25 a. m. the following day, May 22. The cases were removed from the car that day and put in the freight house and at plaintiff's request were held there until the 25th when, at plaintiff's direction, they were delivered by appellant to Coey & Evans Transfer Company and by them on the same day delivered to the plaintiff. Upon the opening of the cases it was found that the shipment was short and that shortage is the basis for this suit.

In his brief, plaintiff contends that the defendant was the terminal carrier in that it was the last railway carrier to handle this shipment, citing *Nanson v. Jacob,* 93 Mo. 331, and *Western & A. Ry. Co. v. Exposition Cotton Mills,* 81 Ga. 522. In the former case the question of whether the carrier was a connecting or the terminal carrier was in no way involved in the issues which were presented to the court. In the latter case, certain machinery was shipped from Boston to the plaintiff at Atlanta. It passed over several railroads and arrived at Atlanta over the defendant road. There the defendant turned it over to the Georgia Pacific Railroad Company which transported it two miles and a half, from the defendant's terminal to the plaintiff's

390     APPELLATE COURTS OF ILLINOIS.

Neuman v. Chicago and Northwestern Ry. Co., 216 Ill. App. 387.

mills. It was held that the defendant was the terminal carrier. This was so because of the terms of the contract involved, which required the defendant to deliver the machinery to the plaintiff and under the terms of which the Georgia Pacific Railroad Company was the agent of the defendant.

If it be held that the defendant in the case at bar was the terminal carrier, then the plaintiff further contends that the rule announced in *Peoria Packing Co. v. Nashville, C. & St. L. Ry. Co.*, 164 Ill. App. 646; *Ruddell v. Baltimore & O. R. Co.*, 175 Ill. App. 456, and *Trott v. Baltimore & O. R. Co.*, 192 Ill. App. 239, would apply and that, under the rule, the presumption would be that the shortage or damage sued for occurred while the goods were in the defendant's possession and it would have the burden of proving the contrary, the plaintiff having proven that the goods had been shipped in good condition and that upon delivery to him the shortage or damage complained of had been discovered. We are of the opinion that, assuming the defendant to be the terminal carrier, the rule referred to would not be applicable here, unless and until the plaintiff showed further that the shortage or damage in question did not occur while the goods were in the possession of the Coey & Evans Transfer Company.

The reason for the rule above referred to is well given by the court in *Connelly v. Illinois Cent. Ry. Co.*, 133 Mo. App. 310, 113 S. W. 233, quoted with approval in *Peoria Packing Co. v. Nashville, C. & St. L. Ry. Co.*, 164 Ill. App. 646, as follows:

"When property is delivered to a carrier in good condition to be transported over its own line, and the line or lines of one or more other carriers, and the property is damaged en route, for the purpose of giving an effective remedy to the owner, who can rarely prove what carrier was to blame for the damage, it is held proof that the goods were delivered to the owner

at destination by the final carrier in bad order establishes a prima facie case against said carrier. This is because it could have protected itself from responsibility for losses occurring prior to its reception of the property by an inspection of its condition at the transfer point. And, moreover, sources of evidence regarding where the blame rests are more accessible to the last carrier than they are to the shipper."

This rule is applicable whether the consignor or the consignee is the party plaintiff. Where the last railroad carrier delivers a shipment of goods to a local drayman who receives the goods from the railroad and delivers them to the consignee, and especially where the drayman is the agent of the latter, as was the situation in the case at bar, the source of evidence, which may prove whether the blame for the shortage or damage complained of rests with the drayman, is quite as accessible to the consignee as to the railroad, if not more so, and therefore the reason involved in the rule does not apply to such evidence and it would not be true, as plaintiff contends, that the defendant railroad would have the burden of proving that the shortage or damage occurred while the goods were in the possession of the drayman but it would be incumbent on the plaintiff consignee to show that it did not occur while in the possession of the drayman.

However, in his argument, the plaintiff refers to and treats the defendant as a connecting carrier. Defendant contends that such is the case and we are inclined to that view on the facts involved. The Coey & Evans Transfer Company was a common carrier. It undertook, for hire or reward, to transport from place to place the goods of those who chose to employ it. *Hastings Exp. Co. v. City of Chicago,* 135 Ill. App. 268; *Johnson Exp. Co. v. City of Chicago,* 136 Ill. App. 368. Under the evidence in this case, it is our opinion that the transfer company was the terminal carrier. *Texas & P. Ry. Co. v. Capper,* 38 Tex. Civ. App. 61,

392　Appellate Courts of Illinois.

Neuman v. Chicago and Northwestern Ry. Co., 216 Ill. App. 387.

84 S. W. 694; *Ringwalt v. Wabash R. Co.*, 45 Neb. 760, 64 N. W. 219. The plaintiff has, therefore, brought his suit against the defendant as a connecting carrier to recover for an alleged shortage of goods, which carrier delivered the goods to a transfer company at the point of destination and the plaintiff has established the fact that the goods were shipped in good condition and that the shortage claimed was discovered when the goods were delivered to him by the transfer company. The burden was also on the plaintiff to show that the shortage was, suffered while the goods were in the defendant's possession, or at least to raise a presumption to that effect by showing that the shortage was not suffered while the goods were in the possession of the transfer company. *Texas & P. Ry. Co. v. Capper*, 38 Tex. Civ. App. 61, 84 S. W. 694; *Ringwalt v. Wabash R. Co.*, 45 Neb. 760, 64 N. W. 219.

Under either theory of the case, where the last railroad carrier does not deliver to the plaintiff direct but through a transfer company, which is the plaintiff's agent, the burden is on the plaintiff to show that the loss did not occur while the goods were in the possession of the latter.

In the case at bar the plaintiff did not call any witness connected with the transfer company or submit any evidence directly showing or tending to show that the shortage complained of did not occur while the goods were in the possession of the transfer company. The plaintiff contends that the testimony of defendant's witnesses, and particularly that of the witness O'Hoff, hereinafter referred to, was sufficient to establish that fact. We are of the opinion that it was not, and further that the evidence was not sufficient to meet the burden which was upon the plaintiff, of showing that the shortage occurred while the goods were in the defendant's possession.

The plaintiff testified that when the two boxes in

question reached him "they were all broken up. * * * The tops of both boxes were broken, and the ends were even broken from the boxes." On cross-examination he testified that the Coey & Evans Transfer Company did all of his draying; that he did not know what condition the boxes were in when they were delivered by defendant to that company and he again testified that when he received the boxes at his store both covers were split and broken "and pieces came out of them. * * * One bottom was broke too"; that he did not think one could put his hand in and take out something; that the openings were three-quarters of an inch in some places; that the covers were nailed very loose and the nails were coming out of the box.

Witnesses for the defendant terminal company, which was found not guilty, testified that the cases weighed 350 pounds, which was approximately the weight given by the witness connected with the consignor who said that the weight of the two cases packed would be between 320 and 340 pounds. Witnesses for the terminal company further testified that if they received cases that were broken or not in good condition they would not accept them. One White, assistant foreman of the freight house of the defendant, at which the terminal company turned these cases over to defendant, testified that if they received a case that was tight, they would not reject it merely because there were openings in it, but if the case was poorly nailed and apparently falling to pieces, they would have their cooper examine it and nail it up and if anything like that was done it would appear on their receipt.

One McDermott, a checker for the defendant, received the cases in question from the terminal company. He testified that if they received cases that were nailed tight with spaces between the boards the size of a lead pencil they would pass them as all right, but if they were poorly boxed or showed signs of loos-

394    APPELLATE COURTS OF ILLINOIS.

Neuman v. Chicago and Northwestern Ry. Co., 216 Ill. App. 387.

ening up or were broken they would not pass them but would call the cooper and have him open the cases and manifest them and then require them to be renailed and reboxed, "and note that on the bill." He further testified that the mere fact that a case was not nailed well would not give occasion for them to open it up and renail it if the boards were sufficiently fastened. If there were spaces the size of a lead pencil between the boards through which the contents could not pass or be taken, they would pass the case as all right.

One Johnke, a weigher at defendant's freight house, testified to the same effect. He also said that if nails in cases stick out on the sides where you are liable to catch your fingers and tear them in handling it they sometimes had them "nailed back" by the cooper but that they would not take the boards off and renail them unless the boards were loose.

One O'Hoff, checking and delivery clerk for defendant at DeKalb, testified that if a board was torn off or lost when a box came to the freight house he would fix the box up.

As to the condition of the cases in question while they were in the possession of the defendant, McDermott testified that they weighed 350 pounds when weighed just after they had been turned over to defendant by the terminal company. O'Hoff testified that he remembered the two cases in question; that they were old boxes which looked as though they had been used "hundreds of times,"—the boards were not straight edged; that you could see the contents in some of the boxes but it was not possible for the contents to fall out; that the boxes were intact; that the tops of the boxes were not broken into or the boxes opened up in any way while they were in the freight house at DeKalb; that the boxes contained in this consignment to plaintiff were all old boxes; they "wouldn't stand much knocking around"; they were nailed; on the two cases in question the nail heads stuck out of them;

"I caught my finger on one of them"; that the nails were driven in the top and bottom and came out through the wood on the sides of the boxes; that there were spaces between the boards about the thickness of a pencil while some were much closer together; that these cracks were on the sides of the boxes and not on the tops or bottoms. He was asked whether he would say these two cases were received at DeKalb in good or bad shape and he answered, "I would say they were in good shape. * * * The contents were intact and the cases were received in good shape for old boxes."

This evidence is not sufficient to prove that the shortage of goods complained of did not take place while the goods were in the hands of the transfer company. From what O'Hoff says we could not say that the suits in question had been removed from the cases at the time he handled them. It may well be that the cases at that time had been somewhat loosened up but that the shortage sued for took place after the cases left defendant's possession and before delivery to the plaintiff, or, in other words, when they were in the possession of the transfer company. The case would be different if there was testimony in the record by the drayman to the effect that nothing was taken from the cases while they were in his possession and that when he received them from the defendant they were in the condition described by the plaintiff in his testimony,—thus contradicting the witness O'Hoff.

The plaintiff contends that the defendant is the connecting carrier in this shipment in whose possession the condition of the cases first showed a change after leaving the shipper's possession. We find no evidence in the record bearing out that contention or showing that when these two cases left the possession of the shipper, they were in any different condition than that above described by the defendant's witnesses, except that the man who packed the goods for the consignor was asked "whether there were cracks or anything in

396     APPELLATE COURTS OF ILLINOIS.

Neuman v. Chicago and Northwestern Ry. Co., 216 Ill. App. 387.

the boxes" and he answered "No, sir, they were all nailed good and tight," and he also testified, "there is wide papers on the case that extend across, covers all up completely," and on redirect examination he was asked, "I believe you stated that they were wrapped in paper, something all around them?" and he answered, "Yes, sir * * * good heavy wrapping paper." He also testified that these were not new cases but had been received by the consignor in a shipment to them from the woolen mills. The testimony of the witnesses for the two defendants to the effect that they never received cases in a damaged or broken condition does not support the plaintiff's contention. All the witnesses who testify on the subject of the actual condition of these cases while in defendant's possession say that the cases were in good condition although they were old and there were cracks between the boards on the sides of the cases and some of the nails stuck out.

In our opinion a finding that the shortage in this shipment did not occur while it was in the possession of the transfer company but occurred while it was in defendant's possession is against the manifest weight of the evidence. The evidence of the defendant on the latter point tended to show the contrary. The course of the freight through defendant's freight house in Chicago and into the cars was shown. It was further shown that the car in which these cases were shipped was closed and both doors sealed when the freight handlers quit work and the seals were intact when the car reached DeKalb. The evidence further tended to show that the cases were in no way tampered with while they were in the hands of defendant's agents in DeKalb.

For the reasons we have stated the judgment for the plaintiff cannot be sustained and it will, therefore, be reversed and the cause remanded to the county court for a new trial.

*Reversed and remanded.*